2001 UT 50

**Robert S. TREFF, Plaintiff and Appellant,**

v.

**Gordon B. HINCKLEY, President of the Church of Jesus Christ of Latter-day Saints, Thomas S. Monson, First Counselor in the First Presidency of the Church of Jesus Christ of Latter-day Saints, James E. Faust, Second Counselor in the First Presidency of the Church of Jesus Christ of Latter-day Saints, Doris Wilson, Division of Family Services for the State of Utah, Susan Chandler, Wendy Wright, James Baumgardner, Sheila Doyle, John and Jane Does 1–30, Defendants and Appellees.**

No. 990673.

Supreme Court of Utah.

June 12, 2001.

Robert S. Treff, pro se.

Mark L. Shurtleff, Att'y Gen., Brent A. Burnett, Asst. Att'y Gen., Salt Lake City, for Susan Chandler and Wendy Wright.

Randy T. Austin, Amy S. Thomas, Salt Lake City, for Gordon B. Hinckley, Thomas S. Monson, and James E. Faust.

DURRANT, Justice:

¶ 1 Robert S. Treff appeals the dismissal of his complaint that alleged causes of action relating to the baptism of his children. Treff was incarcerated after shooting and killing his wife. His two children were placed in the custody of his wife's sister and later baptized as members of the Church of Jesus Christ of Latter-day Saints. Treff filed suit several years later, denominating causes of action for violation of his parental rights and alienation of affections. The district court dismissed the lawsuit for failure to state a claim. Treff appeals. He further complains that the trial judge improperly refused to recuse himself for religious bias and improperly prevented Treff's personal attendance at the hearing on the motion to dismiss. We affirm.

## BACKGROUND

¶ 2 On Christmas Day, 1986, Treff shot and killed his wife, Jennifer. The Treffs had two young children. After killing his wife, he

took his children to a motel, left them there, and then drove to a coworker's residence and firebombed it with Molotov cocktails. *See United States v. Treff*, 924 F.2d 975, 980–82 (1991). He was incarcerated the following day and has remained in custody since that time. He has been sentenced to serve twenty years for manslaughter for the killing of his wife, to be followed by a twenty-five year sentence on federal charges related to the firebombing incident. *See id.*

¶ 3 For several months immediately following the incarceration of their father, Treff's children remained in foster care under the supervision of Susan Chandler, a Division of Family Services caseworker. Subsequently, the State placed the children in the custody of their aunt (Jennifer Treff's sister), Sheila Doyle. Doyle resided in California and took the children to live with her there.

¶ 4 Treff asserts that in 1987 and 1988 he was misled into believing that his parental rights had been terminated. He maintains that he was so informed by a Department of Corrections caseworker, two public defenders, and an assistant United States Attorney General. Sometime within approximately a year-and-a-half following Treff's arrest, both of Treff's children were baptized into the Church of Jesus Christ of Latter-day Saints.[1] Treff claims that in 1997 he discovered that his parental rights in fact had not been terminated.[2]

¶ 5 In 1998, Treff filed suit against Gordon B. Hinckley, Thomas S. Monson, and James E. Faust—who constitute the First Presidency of the Church of Jesus Christ of Latter-day Saints ("the Church Defendants")—and a number of other persons who had undertaken responsibility for the care and custody of his children after his incarceration. Treff alleged that: (1) the Church Defendants and the other defendants responsible for his chil-

dren's custody at the time of their baptism had violated Treff's parental rights by permitting the baptism; and (2) defendants Doyle, Chandler, Wendy Wright, Doris Wilson, and James Baumgardner had intentionally, maliciously, and fraudulently alienated the affections of his children by preventing them from visiting Treff or communicating with him.

¶ 6 In connection with these stated causes of action, Treff presented a list of six demands for relief. His first two demands for relief were procedural and were unrelated to his causes of action: he requested a judge who was not a member of the Church of Jesus Christ of Latter-day Saints and also asked that counsel be appointed to represent him.[3] His third and fourth demands for relief were apparently related to his cause of action for violation of his parental rights. Specifically, he requested "a declaratory order that defendants have violated the cited state statutes and concurring constitutional rights and protections of plaintiff," and an "[o]rder that [the Church] defendants immediately withdraw the names of [his children] from the official roles [sic] and membership within the [Church]." The fifth demand for relief was articulated as relief for his alienation of affections claim. It detailed specific sums of money as compensatory and punitive damages to be assessed against each of the defendants. His sixth demand for relief was also apparently related to his alienation of affections claim; it requested that he be provided with the address and telephone number of his children and that the defendants be prospectively enjoined from "any further interference with the communications between plaintiff and children."

¶ 7 Treff's case was assigned to Judge David Young. Treff filed two motions to

---

1. Treff alleges that the baptisms occurred sometime before August 12, 1987, while the children were still in foster care. Defendants Hinckley, Monson and Faust assert that church records indicate that the baptisms took place on July 3, 1988, after the children were placed in their aunt's custody. The precise date of the baptisms is immaterial to our decision.

2. The Appellees make no argument regarding the actual status of Treff's parental rights. Because

the district court dismissed Treff's complaint for failure to state a claim, that issue is not before us.

3. He also requested an order that the defendants be required to provide an updated address list for service of process. Because we do not decide any issues on the basis of failure of service, this demand is immaterial to any issues on appeal.

disqualify Judge Young, based on Treff's allegations that Judge Young was biased because he was a member of the Church of Jesus Christ of Latter-day Saints. These motions were reviewed by the presiding Judge, Robin Reese. Judge Reese determined that Treff had alleged nothing more than Judge Young's religious affiliation and his reputation in relation to certain other well-publicized cases as a basis for the motion. Because Treff had failed to make any specific allegations indicating bias in his case, Judge Reese denied both motions for failure to state facts sufficient to support the allegations of bias or conflict of interest.

¶ 8 The defendants moved to dismiss Treff's complaint pursuant to rule 12(b)(6) of the Utah Rules of Civil Procedure. Treff alleges a hearing was held on the motion that he was not permitted to attend. The court granted the motion to dismiss on the grounds that the asserted causes of action were not recognized by law, were barred by the statute of limitations, and would raise serious constitutional concerns if they were recognized.

## ANALYSIS

¶ 9 Treff appeals all of the above determinations.[4] We will treat the trial court's rejection of Treff's demands for relief in the order listed above.

¶ 10 Treff's first two demands for relief are without merit. First, Treff has shown no error in Judge Reese's denial of his motions for Judge Young's recusal. A litigant may move for a judge's recusal upon presentation of "an affidavit stating facts sufficient to show bias, prejudice or conflict of interest," see Utah R. Civ. P. 63(b)(1)(A), but an allegation that is based on religious affiliation alone or that pertains to allegations of bias in unrelated contexts is not sufficient. Treff had no right to effect the recusal of the judge assigned to a case based solely on the judge's religious affiliation. Second, there is no statutory or constitutional requirement

that counsel be appointed to assist inmates in prosecuting civil complaints that are unrelated to wrongful restraints on personal liberty. See Gardner v. Holden, 888 P.2d 608, 622 & n. 5 (Utah 1994); see also Utah Code Ann. § 78-35a-109 (detailing criteria for appointment of pro bono counsel in certain habeas cases).

¶ 11 With respect to Treff's asserted causes of action, and the demands for relief associated with them, we conclude that the district court correctly held that Treff failed to state a claim. In treating these issues, we first note that the only portion of Treff's brief that even arguably contains legal analysis supported by citations is his "Statement of Issues." His "Determinative Constitutional and Statutory Provisions" section provides a list of citations and quotations, but there is no attempt elsewhere in the brief to articulate their connection to, or their pertinent support of, his underlying causes of action. Absent that exercise, the determinative provisions section serves no purpose. And his "Argument" section contains no legal argument (as he readily admits by stating that he "will not talk law to this court"). Although we grant Treff some leeway due to his status as a pro se litigant, this court will not assume his " 'burden of argument and research.' " State v. Thomas, 961 P.2d 299, 304 (Utah 1998) (quoting State v. Bishop, 753 P.2d 439, 450 (Utah 1988) (further quotation omitted)). We therefore consider only those arguments articulated in the "Statement of Issues" section, and only insofar as they are properly before us on appeal.

¶ 12 Treff's claim of interference with parental rights, and the demands for relief associated with that purported cause of action, apparently are based on section 78-3a-103 of the Utah Code. That statute lists the right to determine religious affiliation as a "[r]esidual parental right[ ]." Id. § 78-3a-103(u).[5] However, the statutes Treff cites in furtherance of his claim merely pertain to the procedures the State must follow to remove a child from a parent's custody or terminate a

---

4. Treff also attempts to raise a number of new issues concerning various injustices or improprieties surrounding the adjudication of his complaint. We will not address any new arguments raised for the first time on appeal. See State v. Anderson, 789 P.2d 27, 29 (Utah 1990).

5. We cite the version in effect at the time Treff filed his complaint. That version was enacted in 1996. See Utah Laws 1996, ch. 1, § 26. The definition of "[r]esidual parental rights and duties" is currently codified at subsection (v). See Utah Code Ann. § 78-3a-103(v) (Supp.2000).

parent's rights. *See, e.g.,* Utah Code Ann. §§ 78–3a–301 to –410. They do not provide the remedies Treff seeks for interference with parental rights that he alleges have never been terminated. The constitutional provisions Treff cites are wholly irrelevant, and Treff does not cite any case law in his "Statement of Issues" section demonstrating a statutory or constitutional basis for granting the relief requested.[6] Therefore, the district court correctly held that Treff had failed to state a claim for which he could obtain relief. *See* Utah R. Civ. P. 12(b)(6).

¶ 13 With respect to Treff's asserted cause of action for alienation of affections, and the associated demands for relief, no Utah case has extended the tort of alienation of affections to include a cause of action relating to disruptions of the relationship between a parent and a child. We decline to do so now. We therefore affirm the district court's ruling concerning this cause of action.

¶ 14 Finally, we find it unnecessary to address Treff's other claimed basis for appeal. He has articulated no prejudice resulting from the alleged failure to provide him the opportunity to attend the hearing on the defendants' motion to dismiss.[7] Treff's complaint was facially deficient and we have

reviewed the district court's ruling for correctness. In other words, Treff effectively has received de novo appellate review of his complaint. Hence, none of the procedural anomalies he alleges affected the outcome of his case.

¶ 15 The other arguments Treff presents, primarily relating to allegations of attorney misconduct and other asserted irregularities, are either tangential and irrelevant or were waived due to failure to raise them in the trial court. We decline to consider them on the merits.

¶ 16 The district court's judgment is affirmed.

¶ 17 Associate Chief Justice RUSSON, Justice DURHAM, Justice WILKINS, and Judge DAVIS concur in Justice DURRANT'S opinion.

¶ 18 Having disqualified himself, Chief Justice HOWE does not participate herein; Court of Appeals Judge JAMES Z. DAVIS sat.

6. The single case citation Treff provides, *Santosky v. Kramer*, 455 U.S. 745, 768–70, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), only treats the procedures due upon termination of parental rights. Since the basis for Treff's complaint is that his parental rights have *not* been terminated, this citation is irrelevant.

7. Moreover, prisoners do not possess an unqualified right to attend motion hearings in the civil litigation they prosecute. *See, e.g., Demoran v. Witt*, 781 F.2d 155, 158 (9th Cir.1986) (holding judge's refusal to allow prisoner to attend summary judgment hearing did not violate prisoner's rights). Where such hearings pertain only to legal argument, a prisoner's interests may be sufficiently presented in written form. *See, e.g., State ex rel. M.A.V. v. Vargas*, 736 P.2d 1031, 1033 n. 2 (Utah Ct.App.1987). Indeed, only in a few narrow contexts has it been held that a prisoner should be allowed to attend court. In civil rights litigation, for instance, where prisoners can make an adequate showing of the necessity to testify in their own behalf as plaintiffs in civil rights litigation, a trial court may find the prisoner's attendance is necessary; but such determinations involve a discretionary balancing test rather than an absolute right. *See, e.g., Stone v. Morris*, 546 F.2d 730, 735 (7th Cir.1977)

(holding that court, in its discretion, must balance prisoner's legitimate interest in presenting testimony at trial with state's interest in maintaining prisoner in confinement); *see also Jones v. Hamelman*, 869 F.2d 1023, 1030 (7th Cir. 1989) (same); *Poole v. Lambert*, 819 F.2d 1025, 1028–29 (11th Cir.1987) (same). In a similar vein, this court, in *Stinnett v. Turner*, 20 Utah 2d 148, 434 P.2d 753, 754 (1967), held that a prisoner was entitled to attend his own habeas hearing. In another context, *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), discussed the heightened due process concerns arising in proceedings where the state seeks to terminate parental rights. *See id.* at 752–54, 102 S.Ct. 1388. These due process concerns necessarily implicate a parent's right to participate in the termination proceedings, *see Cook v. Boyd*, 881 F.Supp. 171, 175 (E.D.Pa.1995); but the hearing in this case was not a termination proceeding, and no state representatives had the ability to seek an alteration in Treff's parental status as any part of this action. Thus, the motion hearing neither fit within any of the recognized circumstances where a court may be obligated to allow the attendance of a prisoner, nor otherwise implicated due process. It was not error, much less reversible error, for the court to conduct the hearing in Treff's absence.