2003 UT 23

**Craig Curtis SMITH, Plaintiff and Appellant,**

v.

**FOUR CORNERS MENTAL HEALTH CENTER, INC., a Utah corporation, Larry Randall and Carolyn Randall, and unknown defendants, X, Y, Z, Defendants and Appellees.**

No. 20010826.

Supreme Court of Utah.

May 13, 2003.

C. Danny Frazier, Roger W. Griffin, Lehi, for plaintiff.

Douglas L. Stowell, Lloyd R. Jones, Price, for defendant Randalls.

Clifford C. Ross, Salt Lake City, for defendant Four Corners.

DURRANT, Associate Chief Justice:

¶ 1 This appeal concerns the liability of a health care provider and foster parents for injuries one foster child inflicted on another foster child. Craig Curtis Smith sued Four Corners Mental Health Center, Inc. ("Four Corners") and his foster parents, Larry and Carolyn Randall, claiming damages for injuries he received when he was purportedly sexually assaulted by another foster child

placed with the Randalls. According to Smith, Four Corners' negligence stems from its failure to supervise the Randalls and properly provide foster care services, and the Randalls' negligence stems from their failure to properly supervise Smith's activities with another foster child. Smith claims that these failures by both of the defendants proximately caused his injury. Four Corners and the Randalls filed separate motions for summary judgment. The district court granted both motions, and Smith appeals. We reverse summary judgment as to the Randalls because they failed to assert sufficient facts to support their legal argument, but we affirm summary judgment as to Four Corners because Smith failed to comply with the requirements of the Utah Health Care Malpractice Act ("UHCMA").

## BACKGROUND

■ ¶ 2. " '[I]n reviewing a grant of summary judgment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party.' " *Young v. Salt Lake City Sch. Dist.*, 2002 UT 64, ¶ 2, 52 P.3d 1230 (quoting *Higgins v. Salt Lake County*, 855 P.2d 231, 233 (Utah 1993)). We state the facts of this case accordingly.

¶ 3 On or about January 14, 1992, the Seventh Judicial District Court placed Smith in the custody of the Department of Human Services ("DHS").[1] That same day, DHS placed Smith in the home of the Randalls,[2] who were licensed, approved, and controlled by DHS as foster parents. In addition to DHS, Four Corners, a Utah corporation providing mental health care and other related services in Carbon and Emery counties, supervised the foster care provided by the Randalls. Shortly afterwards, in February 1992, DHS and Four Corners placed another foster child, J.B., in the Randalls' home.

---

1. The record and the briefs refer at times to either DHS or the Division of Child and Family Services ("DCFS") as the governmental agency responsible for Smith's care. Since DHS, not DCFS, was specifically named as a defendant in the complaint, we refer only to DHS to maintain consistency.

2. The Randalls, in their affidavit, claim that Smith was placed in their home in March 1992 by DHS. However, this discrepancy of fact is not material to Smith's complaint.

¶ 4 J.B. and Smith shared a bedroom in the Randalls' home for at least an entire year, during which time the Randalls often left Smith and J.B. together without supervision. Sometime in June 1993, J.B. sexually assaulted Smith.[3] Smith attempted to notify the Randalls, caseworkers, and other authorities of the sexual assault, but they failed to adequately discuss Smith's complaints with him.

¶ 5 In March 1994, Smith first told his mother, Traci Pettyjohn, about the sexual assault. On August 14, 1994, Smith and Pettyjohn filed a notice of intent to file a claim directed at both DHS and Four Corners. No claim was filed, however, until November 28, 1998, when Smith, having turned eighteen on January 14, 1998, first brought this claim against DHS, Four Corners, and the Randalls.

¶ 6 In his claim, Smith alleged that the Randalls negligently left Smith and J.B. without sufficient supervision. He also alleged that DHS and Four Corners acted recklessly and with gross negligence in failing to protect Smith from J.B. Smith's complaint alleged that (1) J.B. possessed a violent character and had homosexual tendencies, (2) DHS and Four Corners had actual or constructive knowledge of these tendencies, and (3) they failed to properly protect Smith from injury by inadequately supervising caseworker services provided to the Randalls, Smith, and J.B. and by placing Smith and J.B. in a home together.

## PROCEDURAL HISTORY

¶ 7 At the beginning of January 1999, DHS filed a motion to dismiss, claiming governmental immunity. Smith did not respond to this motion, and on February 5, 1999, the district court granted DHS's motion. In its order dismissing DHS, the district court expressly relied on the arguments in DHS's motion to support its conclusion that DHS was immune from suit.

¶ 8 Over one year later, Four Corners filed a motion for summary judgment on July 27, 2000, arguing that it could not be held liable for Smith's injuries. In its motion, Four Corners maintained, among other things, that it was a health care provider as defined by statute and that Smith had failed to comply with the statutory requirements for timely filing a claim against such providers. The Randalls filed their own motion for summary judgment on October 5, 2000, arguing that they did not breach their duty of care or, in the alternative, that they were immune from suit under either the doctrine of parental immunity or governmental immunity. Responding to the Randalls' motion for summary judgment, Smith submitted the affidavit of his mother, Tracy Morris,[4] to show that the defendants knew or should have known of J.B.'s violent and homosexual tendencies. After receiving Smith's response, the Randalls moved to strike certain statements from Tracy Morris's affidavit, arguing that they contained inadmissible hearsay or opinion testimony and unsupported legal conclusions.

¶ 9 At a hearing on all of these motions on June 19, 2001, Smith produced for the first time two want ads purporting to be from Four Corners. Smith introduced these ads to show that Four Corners had actively recruited potential foster parents to house emotionally disturbed children for pay. The district court accepted these ads into evidence after Smith proffered them at oral argument.

¶ 10 Following this hearing, the district court issued a memorandum decision addressing the Randalls' motion to strike and both the Randalls' and Four Corners' motions for summary judgment. In its memorandum decision, the district court first stated that the Randalls' motion to strike "is not

---

**3.** The parties all concede, for purposes of summary judgment, that the sexual assault occurred in June 1993. The Randalls state in their affidavit, however, that J.B. left their home in February 1993. Their affidavit also states that Smith and J.B. continued to share a bedroom for up to eight additional months after the alleged attack occurred. Viewing the facts and inferences in favor of Smith, we determine that J.B. was still living in the Randalls' home at the time of the attack.

**4.** Traci Pettyjohn and Tracy Morris appear to be the same person.

well taken" and denied that motion. On Four Corners' motion for summary judgment, the district court concluded "that the lawsuit was not timely filed against Four Corners, as set forth in its arguments" concerning the UHCMA, and granted summary judgment. Concerning the Randalls, the district court held that "the primary determination for granting the Motion for Summary Judgment on behalf of the Randalls [was] the argument made by [DHS] and which has been adopted by this Court previously." Relying on its previous decision to grant DHS's motion and its reasoning for granting summary judgment to Four Corners, the district court also concluded that "the Randalls [were] clothed with the same immunities and statute of limitation protections as [DHS] and [Four Corners]."

¶ 11 On appeal, Smith argues that the district court incorrectly granted summary judgment to both Four Corners and the Randalls. First, he claims that governmental immunity protected neither Four Corners nor the Randalls. Second, he argues that neither defendant could claim protection under the UHCMA. Finally, Smith argues that summary judgment was improper for several procedural reasons including (1) the summary judgment order was deficient, (2) the district court improperly sua sponte incorporated arguments from DHS's motion to dismiss into its summary judgment order, and (3) Four Corners failed to properly answer interrogatories and that had they provided complete answers to these interrogatories he might have been able to establish issues of fact prohibiting the district court from granting summary judgment.

¶ 12 We have jurisdiction to hear this case pursuant to section 78–2–2(3)(j) of the Utah Code. Utah Code Ann. § 78–2–2(3)(j) (2002).

## ANALYSIS

### I. STANDARD OF REVIEW

¶ 13 On an appeal of a district court's entry of summary judgment, we apply the same standard as applied by the district court. *City Consumer Servs. v. Peters*, 815 P.2d 234, 239 (Utah 1991); *Durham v. Margetts*, 571 P.2d 1332, 1334 (Utah 1977). According to that standard, summary judgment is only appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c). " 'When reviewing a court's decision to grant summary judgment, we examine the court's legal conclusions for correctness.' " *Young v. Salt Lake City Sch. Dist.*, 2002 UT 64, ¶ 10, 52 P.3d 1230 (quoting *Tustian v. Schriever*, 2001 UT 84, ¶ 13, 34 P.3d 755). "If, after a review of the record, it appears that there is a material factual issue, we are compelled to reverse the trial court's grant of summary judgment." *W. Farm Credit Bank v. Pratt*, 860 P.2d 376, 378 (Utah Ct.App.1993) (citing *Amica Mut. Ins. Co. v. Schettler*, 768 P.2d 950, 957 (Utah Ct.App.1989)).

### II. SMITH'S PROCEDURAL ARGUMENTS AGAINST THE SUMMARY JUDGMENT ORDER

¶ 14 On appeal, Smith makes several procedural arguments attacking the district court's summary judgment order. Smith argues that, to the extent the district court's order granting summary judgment to both Four Corners and the Randalls rests on the theory of governmental immunity, it is deficient because the district court failed to explain the reasoning supporting its conclusion on this theory. Smith further contends that the district court improperly supported its determination that the defendants[5] were entitled to governmental immunity by sua sponte incorporating its ruling regarding DHS's immunity into its order granting summary judgment. In addition, Smith asserts that Four Corners' failure to properly answer interrogatories prevented him from establishing material facts that would have precluded summary judgment based on his failure to comply with the UHCMA. Because these procedural arguments would ultimately be dispositive if true, we consider them first before discussing the propriety of

---

**5.** Although Smith includes both Four Corners and the Randalls in this argument, it only applies to the summary judgment in favor of the Randalls because, as we discuss below, Four Corners waived its governmental immunity claim.

the substantive legal theories offered to justify summary judgment for the Randalls and Four Corners.

### A. Smith Argues that the Summary Judgment Order Was Deficient

¶ 15 In his brief, Smith asserts that the district court's ruling granting summary judgment to the defendants is a clearly deficient document that "must be considered plainly erroneous." He argues that unspecified issues and accompanying argument were crucial to the court's decision and that nondisclosure of this information should invalidate the decision.

¶ 16 Smith's deficiency argument fails because the district court's order included sufficient detail to permit appellate review. When a court decides a motion for summary judgment, rule 52 of the Utah Rules of Civil Procedure states that "[t]he court shall ... issue a brief written statement of the ground for its decision ... when the motion is based on more than one ground." Utah R. Civ. P. 52(a). In an earlier case, we noted that the purpose of rule 52 is to give the parties a written indication of the court's reasoning and held that a "court need only include the basic essentials of the grounds upon which it relies" to comply with the rule. *Schuurman v. Shingleton*, 2001 UT 52, ¶ 8, 26 P.3d 227. The district court stated in its order that it granted summary judgment to Four Corners because Smith failed to timely file his lawsuit. It granted summary judgment to the Randalls because it determined that, like DHS, they were immune from suit. A simple reading of the district court's order reveals the basic grounds upon which it relied to grant summary judgment to both defendants. Therefore, we conclude that the district court's order granting summary judgment was not deficient.[6]

### B. Smith Argues that the Court Incorporated Arguments Sua Sponte

¶ 17 Smith also argues that the district court should not have sua sponte incorporated its earlier order granting DHS's motion to dismiss, and the arguments supporting that decision, into its decision to grant the Randalls summary judgment in order to support that judgment. Contrary to Smith's position, we note that the district court did not incorporate its earlier ruling for DHS sua sponte. In the memorandum supporting their motion for summary judgment, the Randalls specifically argued that they "were appointed to act as foster parents by [DHS]. Consequently, they should be deemed quasi-governmental in their position and should be entitled to the same immunity as [DHS]. [DHS]'s arguments on immunity, which have already been successful herein, are incorporated herein by this reference." Additionally, at oral argument before the district court, the Randalls clearly claimed governmental immunity based on their relationship with DHS. Because the Randalls made this argument in their memorandum and at oral argument before district court, Smith cannot argue that the district court relied sua sponte on its previous holding to justify granting summary judgment to the Randalls.

### C. Smith Charges Answers to Interrogatories Were Incomplete

¶ 18 Finally, Smith argues that summary judgment was premature because he was not able to complete discovery prior to the district court's decision to grant summary judgment. He specifically argues that by failing to completely answer his interrogatories, Four Corners hampered his ability to demonstrate the existence of material facts.

---

6. Countering this argument, the defendants contend that Smith failed to marshal all the evidence in support of the district court's order. When appealing a district court's grant of summary judgment, however, the appellant has no obligation to marshal the evidence. The marshaling obligation only arises after a party challenges the sufficiency of the evidence to support a jury's verdict or a district court's ruling containing specific findings of fact. *See* Utah R.App. P. 24(a)(9); *Harding v. Bell*, 2002 UT 108, ¶ 19, 57 P.3d 1093. At the summary judgment stage, the district court is not concerned about the sufficiency of any evidence because it does not resolve any factual disputes. *See Schurtz v. BMW of N. Am., Inc.*, 814 P.2d 1108, 1111 (Utah 1991). Therefore, the defendants' marshaling argument was inappropriate.

Four Corners argues that this claim was not properly preserved below because Smith failed to move the district court to compel Four Corners to fully answer the interrogatories or to make a rule 56(f) motion to allow for additional discovery.

■ ¶ 19 "We will not address any new arguments raised for the first time on appeal." *Treff v. Hinckley*, 2001 UT 50, ¶ 9 n. 4, 26 P.3d 212; *see also Ong Int'l (U.S.A.), Inc. v. 11th Ave. Corp.*, 850 P.2d 447, 455 (Utah 1993) (" 'With limited exceptions, the practice of this court has been to decline consideration of issues raised for the first time on appeal.' " (citation omitted)). Smith claims that he first raised this issue in his Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment.[7] Despite a close review of both this document and the oral argument before the district court, we are unable to discover any evidence that this issue was ever brought before the court below. Because this issue has been raised for the first time on appeal, it is not properly before us. Therefore, we will not address it.

¶ 20 Since each of Smith's procedural arguments fails, we now turn to discuss whether the district court properly granted summary judgment on the theories of governmental immunity and failure to timely comply with the UHCMA.

## III. GOVERNMENTAL IMMUNITY

■ ¶ 21 Challenging the theories upon which the district court justified summary judgment, Smith first argues that governmental immunity protects neither Four Corners nor the Randalls because they waived this claim in oral argument before the district court. In addition, Smith argues that no special relationship existed between the Randalls and DHS that would immunize the Randalls from suit.

¶ 22 In its brief, Four Corners admits that it waived any claim to governmental immunity in oral argument before the district court;[8] however, the Randalls assert that they did not waive their right to claim governmental immunity.[9] Defending the district court's decision to grant summary judgment, the Randalls argue that their status as employees for DHS establishes an agency relationship entitling them to immunity under the umbrella of DHS.

■ ¶ 23 In its memorandum decision, the district court determined that the Randalls were entitled to the same immunity as DHS. The Randalls argue that this determination was justified because they were clothed with the same immunity, and to the same extent, as DHS under the law of the case doctrine. However, even under the law of the case doctrine, the Randalls would be entitled to summary judgment only if they established a relationship sufficient to entitle them, as a matter of law, to the same immunity enjoyed by DHS. Because the Randalls failed to establish such a relationship, summary judgment was inappropriate on this theory.

■ ¶ 24 For a moving party to be entitled to summary judgment, it must establish a right to judgment based on the applicable law as applied to the undisputed facts. *See* Utah R. Civ. P. 56(c); *Transamerica Cash Reserve, Inc. v. Dixie Power & Water, Inc.*, 789 P.2d 24, 25 (Utah 1990). We have noted that summary judgment "should be granted only when all the facts entitling the moving party to a judgment are clearly established or admitted." *Sorenson v. Beers*, 585 P.2d 458, 460 (Utah 1978). For summary judgment to be appropriate, these undisputed facts provided by the moving party must "preclude[ ], as a matter of law, the awarding of any relief to the losing party." *FMA Acceptance Co. v. Leatherby Ins. Co.*, 594 P.2d 1332, 1334 (Utah 1979); *see also Staker*

---

7. This document was Smith's response to the Randalls' Motion for Summary Judgment and had no bearing on, and made no reference to, Four Corners' response to interrogatories.

8. A review of the June 19, 2001, transcript confirms that Four Corners waived this claim in its oral argument before the district court.

9. Prior to oral argument before this court and at oral argument before this court, Smith conceded that the Randalls did not waive this claim.

*v. Ainsworth,* 785 P.2d 417, 419 (Utah 1990) ("[T]here must exist undisputed facts in the evidence before the trial court relating to each of the elements of [the legal doctrine upon which the trial court rests its decision to grant summary judgment] in order for us to affirm the ruling.").

¶ 25 Defending the district court's summary judgment, the Randalls first argue that they are entitled to the same immunity that the district court gave to DHS. They assert that the district court's earlier ruling dismissing DHS became the law of the case and that their agency relationship with DHS entitles them to the same immunity protection. Under the law of the case doctrine, "a decision made on an issue during one stage of a case is binding in successive stages of the same litigation." *Thurston v. Box Elder County,* 892 P.2d 1034, 1037 (Utah 1995). In this case, the district court considered the facts of this case, determined that governmental immunity applied to DHS and issued an order granting DHS's motion to dismiss on February 5, 1999. Though this decision is binding under the law of the case doctrine, it does not automatically assist the Randalls. For the Randalls to benefit from this prior decision granting immunity to DHS, they must clearly establish a relationship with DHS that legally qualifies them to receive the same treatment.

¶ 26 The Randalls argue that they are qualified to receive the same treatment because they were employees of DHS for purposes of the Utah Governmental Immunity Act ("UGIA") and that the UGIA grants immunity to such employees. Utah Code Ann. §§ 63–30–2(2)(a), –4 (1997 & Supp. 2002). According to section 63–30–4 of the Utah Code, a governmental employee may not "be held personally liable for acts or omissions occurring during the performance of the employee's duties, within the scope of employment, or under color of authority." *Id.* § 63–30–4(4). "Employee" is defined by statute as

a governmental entity's officers, employees, servants, trustees, commissioners, members of a governing body, ... educational aides, students engaged in providing services to members of the public in

the course of an approved medical, nursing, or other professional health care clinical training program, volunteers, and tutors, but *does not include an independent contractor.*

*Id.* § 63–30–2(2)(a) (Supp.2002) (emphasis added). Under this definition, the Randalls argue they are entitled to rely on the previous grant of immunity to DHS by the district court because they are employees, not independent contractors.

¶ 27 The facts as they were presented by the Randalls do not, however, clearly establish that they were employees of DHS rather than independent contractors. In the memorandum supporting their motion for summary judgment, the Randalls admit, as alleged by Smith in his complaint, that they were licensed, approved, and controlled by DHS as foster parents. They also admit Smith's allegation that DHS placed Smith in their home. Both of these admissions are supported by the Randalls' affidavit. However, this is the only information establishing a relationship between DHS and the Randalls. From this information, it is not possible to distinguish as a matter of law whether the Randalls are employees, who are entitled to immunity, or independent contractors, who are not. We have noted in other situations that, in general, "an independent contractor is one who is engaged to do some particular project or piece of work, usually for a set total sum, who may do the job in his [or her] own way, subject to only minimal restriction or controls and is responsible only for its satisfactory completion." *Utah Home Fire Ins. Co. v. Manning,* 1999 UT 77, ¶ 11, 985 P.2d 243 (citing *Harry L. Young & Sons v. Ashton,* 538 P.2d 316, 318 (Utah 1975)). On the record before us, the Randalls could be considered either employees or independent contractors.

¶ 28 As it was the Randalls' obligation to clearly establish all of the material facts from which summary judgment could be granted as a matter of law, their failure to explicitly establish their employment status with DHS prohibits summary judgment. *See Sorenson,* 585 P.2d at 460. Due to insufficient facts, summary judgment may not be granted because the court cannot appropriately reach a

legal conclusion regarding the Randalls' employment status with DHS. Thus, we reverse the grant of summary judgment and remand the case for further development of the facts.

## IV. THE UTAH HEALTH CARE MALPRACTICE ACT

¶ 29 Smith's second main argument on appeal is that the district court erred in basing summary judgment on his failure to comply with the requirements of the UHCMA. Utah Code Ann. §§ 78–14–1 to –17 (2002). According to Smith, the UHCMA does not apply to the facts of this case because Smith's injuries did not arise out of the rendering of health care. Instead, Smith argues that they arose out of Four Corners' negligent provision of foster care services. Four Corners responds[10] that the allegations in Smith's complaint state a cause of action for health care malpractice.

¶ 30 According to its own provisions, the purpose of the UHCMA is to "provide a reasonable time in which actions may be commenced against health care providers while limiting that time to a specific period for which professional liability insurance premiums can be reasonably and accurately calculated." *Id.* § 78–14–2. To this end, the statute only applies to malpractice actions against health care providers. Malpractice actions are defined as

> any action against a health care provider, whether in contract, tort, breach of warranty, wrongful death, or otherwise, based on alleged personal injuries *relating to or arising out of* health care rendered or which should have been rendered by the health care provider.

*Id.* § 78–14–3(15) (emphasis added). For Four Corners to rely on the UHCMA, it must show that it is a health care provider, and that Smith's injury arose out of or related to its provision of health care.

¶ 31 Four Corners asserts that it acted as a health care provider, furnishing mental health services to Smith at the time of Smith's injury. Smith does not deny this assertion. Therefore, the only question we are concerned with is whether Smith's injury was related to or arose out of the provision of mental health care. Smith argues that his injury did not result from medical malpractice but that it arose out of Four Corners' provision of foster care services. He contends that he is not seeking to hold Four Corners responsible for J.B.'s actions. Rather, he is attempting to hold Four Corners liable for failing to protect him from J.B.'s actions. He argues that in providing foster care services, Four Corners negligently supervised J.B., himself and the Randalls. He claims that this negligent supervision resulted in his injuries.

¶ 32 In support of his argument that his injuries arose out of Four Corners' provision of foster care services rather than its provision of mental health services, Smith presents two want ads that purportedly show that Four Corners actively recruited foster parents. Though he provided these advertisements during oral argument before the district court, they were not included in the certified record on appeal. Four Corners argues that the want ads were not in evidence before the district court and that they should not be considered for the first time on appeal.

[17, 18] ¶ 33 Despite Four Corners' argument, it is apparent from the district court record that the want ads were presented to the district court. However, the want ads were not included in the record on appeal. According to the Rules of Appellate Procedure, the record on appeal only consists of the original papers and exhibits filed in the district court certified and transmitted to the appellate court. Utah R.App. P. 11. When the certified record is incomplete, rule 11 "establishes a procedure for supplementing the record when necessary." *Olson v. Park–Craig–Olson, Inc.,* 815 P.2d 1356, 1359 (Utah Ct.App.1991). We have noted, however, that "a motion under Rule 11(h) is appropriate only when the record must be augmented

10. Though Smith argues that neither the Randalls nor Four Corners can rely on the UHCMA, we will only analyze this argument as it applies to Four Corners. The Randalls did not argue that the UHCMA applied to them before the district court; thus they cannot rely on this argument as a basis for summary judgment on appeal. *See infra* Part V.A.

because of an omission or exclusion, or a dispute as to the accuracy of reporting." *Olson,* 815 P.2d at 1359 (citing *State v. Moosman,* 794 P.2d 474, 478–79 & n. 17 (Utah 1990)). In this case, neither party has brought a rule 11(h) motion to include the two want ads in the record on appeal.

¶ 34 Even if we were to include the want ads in the record on appeal, they lack evidentiary value. No information was submitted with the want ads to indicate how these ads specifically relate to this case. One want ad is barely legible and contains no information concerning the date of its publication or even the name of the publication or newspaper in which it was found. The other want ad appears to be a list of several different want ads that appeared in several publications between June 30, 1991, and December 23, 1991. Without any information linking them with the provision of foster care services by Four Corners at the time Smith received his injuries, it is unclear what relevance these ads have to this case. Without such information, these want ads have no relevant bearing on what type of services Four Corners was providing to Smith at the time of his injury, and they can have no effect on the outcome of this decision.

¶ 35 Moreover, even if we otherwise adopt Smith's position that Four Corners provided him foster care services, we would not be able to conclude that Smith's injury arose solely, or even mostly, out of Four Corners' foster care provider role. Smith's complaint claims that Four Corners "knew, had reason to know, or should have known that [J.B.] possessed a violent character, and demonstrated homosexual tendencies." He alleges that Four Corners should be held liable for several reasons, including the following: failing to provide adequate caseworker services to himself and J.B., failing to supervise the preparation and implementation of Smith's treatment plan, and failing to inform the Randalls and Smith of J.B.'s dangerous characteristics. These allegations all arise out of Four Corners' provision of mental health services.

¶ 36 In addition, the uncontested relevant facts show that Smith's claim clearly arises out of Four Corners' role as a health care provider both to Smith and to J.B. In its response to interrogatories, Four Corners explained that it had an open outpatient clinical case with Smith to treat his diagnosed mental health problems at the time he received his injury. It also admitted that, prior to this injury, it had provided mental health care to Smith at the Child and Adolescent Residential Treatment Home. Smith's allegations that Four Corners failed to adequately provide caseworker services and to prepare and implement his mental health treatment plan all relate to Four Corners' role as a mental health care provider. Additionally, the reason Four Corners became involved in providing Smith foster care services arose out of its provision of mental health care to Smith. Because Smith's own allegations arise out of the fact that Four Corners provided mental health services directly to him, Smith was required to follow the procedural requirements of the UHCMA.

¶ 37 Before a malpractice action may be brought against a health care provider, the statute requires that certain procedural steps be taken. "Such protections include notice of intent to commence an action, [Utah Code Ann.] § 78–14–8, a prelitigation panel review, *id.* § 78–14–12(2), and an abbreviated statute of limitations[,] *[i]d.* § 78–14–4(1)." *Platts v. Parents Helping Parents,* 947 P.2d 658, 661 (Utah 1997). *See also Malone v. Parker,* 826 P.2d 132, 133 (Utah 1992) (same); *Carter v. Milford Valley Mem'l Hosp.,* 2000 UT App 21, ¶ 13, 996 P.2d 1076 (same). If Smith failed to follow any of these procedures, Four Corners was entitled to summary judgment as a matter of law. *See Platts,* 947 P.2d at 661.

¶ 38 Four Corners admits that a notice of intent to file a claim dated August 12, 1994, was addressed to it and to the State, but it points out that Smith did not file a lawsuit until November 1998; thus it argues that Smith's claim is barred by the statute of limitations. Section 78–14–4 establishes a two year statute of limitations that begins to run from the time the "patient discovers, or through the use of reasonable diligence should have discovered the injury." Utah

Code Ann. § 78–14–4(1). Even if we assume that the two-year statute of limitations began to run as late as August 12, 1994, the date on which he filed a notice of intent to file a claim, the statute should have expired long before Smith filed his complaint on November 28, 1998. Normally, Smith's failure to comply with the statute of limitations by not filing a claim within two years of the discovery of his injury would bar him from pursuing his claim. *See Schuurman v. Shingleton,* 2001 UT 52, ¶ 13, 26 P.3d 227. However, contrary to the language still contained in section 78–14–4(2), the statute of limitations did not begin to run during Smith's minority. *See* Utah Code Ann. § 78–12–36 (2002) (tolling statute of limitations with respect to minors for most causes of action until a minor reaches the age of majority); *Lee v. Gaufin,* 867 P.2d 572, 589 (Utah 1993) (holding the language of section 78–14–4(2) unconstitutional and tolling the two-year statute of limitations until the age of majority). Therefore, Smith timely filed his claim.

¶ 39 Nevertheless, even though Smith timely filed his claim, he still had to comply with the other statutory requirements by properly addressing a notice of intent to file a claim to Four Corners as required by section 78–14–8 and requesting a prelitigation panel review within sixty days of serving his notice of intent to file a claim on Four Corners as required by section 78–14–12(2)(a). Four Corners provided evidence that Smith failed to provide a notice of intent to file a claim and to request a prelitigation panel review. Unless Smith rebutted or overcame this evidence, Smith's complaint must be considered improper and the grant of summary judgment appropriate.

¶ 40 Once the moving party has presented sufficient evidence to support the claim for judgment as a matter of law, the burden shifts to the non-moving party to provide evidence creating an issue of material fact. According to the Utah Code of Judicial Administration, "[a]ll material facts set forth in the movant's statement and properly supported by an accurate reference to the record shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the opposing party's statement." Utah Code Jud. Admin. 4–501(2)(B). "A party opposing the motion is required only to show that there is a material issue of fact. Affidavits and depositions submitted in support of and in opposition to a motion for summary judgment may be used only to determine whether a material issue of fact exists." *Lamb v. B & B Amusements Corp.,* 869 P.2d 926, 928 (Utah 1993). Therefore, "when the moving party has presented evidence sufficient to support a judgment in its favor, and the opposing party fails to submit contrary evidence, a trial court is justified in concluding that no genuine issue of fact is present or would be at trial." *Amica Mut. Ins. Co. v. Schettler,* 768 P.2d 950, 957 (Utah Ct.App.1989) (citing *Dupler v. Yates,* 10 Utah 2d 251, 269, 351 P.2d 624, 636–37 (1960)).

¶ 41 Although Smith provided some evidence that he served a notice of intent to file a claim on Four Corners on August 12, 1994, we question whether this document properly complies with section 78–14–8. We need not address this concern, however, because Smith did not provide any evidence to contradict or rebut the properly supported fact in Four Corners' motion for summary judgment that he did not request a prelitigation panel review. Because Smith failed to show that he had requested a prelitigation panel, he is barred from pursuing his claim, *see* Utah Code Ann. § 78–14–12(1)(c), and summary judgment was appropriate on this theory.

## V. ALTERNATIVE THEORIES FOR SUMMARY JUDGMENT

¶ 42 Both defendants presented alternative arguments justifying summary judgment. Because the UHCMA issue is dispositive as to Four Corners, we need not consider any of Four Corners' alternative arguments. However, since we hold that the Randalls are not entitled to summary judgment based on governmental immunity, we must determine whether their alternative arguments would justify summary judgment. Summary judgment may be affirmed "on any ground available to the trial court, even if it is one not relied on below." *Higgins v. Salt Lake County,* 855 P.2d 231, 235 (Utah 1993).

¶ 43 As alternative justifications for summary judgment, the Randalls offer three reasons to support the district court's ruling. First, the Randalls argue that they too should be protected by the provisions of the UHCMA. Second, they claim that they acted in loco parentis to Smith and are therefore entitled to parental immunity. Finally, the Randalls argue that they owed no duty to Smith because J.B.'s acts were unforeseeable.

### A. The Randalls Cannot Rely on the UHCMA

¶ 44 Regarding their first alternative argument, the Randalls admit that they did not argue this question before the district court, but they nevertheless argue on appeal that they are protected by the provisions of the UHCMA under the narrow and specific facts of this case. Because we do not consider issues raised for the first time on appeal, *see Treff v. Hinckley,* 2001 UT 50, ¶ 9 n. 4, 26 P.3d 212, summary judgment cannot rest on this argument.

### B. The Randalls' Parental Immunity Argument Is Inadequately Briefed

¶ 45 Second, the Randalls make a cursory argument that summary judgment is appropriate because their quasi-parental relationship with foster children entitles them to rely on the doctrine of parental immunity. We have not yet recognized the doctrine of parental immunity in Utah. *See Farmers Ins. Exch. v. Call,* 712 P.2d 231, 235 & n. 1 (Utah 1985). We did note, over twenty years ago, that "[t]here is a clear majority trend toward limiting or abolishing" this common law rule. *Elkington v. Foust,* 618 P.2d 37, 40 (Utah 1980) (quotation and citation omitted).

¶ 46 In support of their argument that we should recognize the doctrine of parental immunity and that such immunity should apply to foster parents, the Randalls merely cite a few cases and provide very little analysis. A brief is inadequate when it merely contains "bald citation[s] to authority [without] development of that authority and

reasoned analysis based on that authority." *State v. Thomas,* 961 P.2d 299, 305 (Utah 1998). As we have repeatedly noted, we are not "a depository in which [a party] may dump the burden of argument and research." *Id.* (quotation and citation omitted). We therefore decline to address the Randalls' parental immunity argument because it has not been adequately briefed.

### C. Smith's Injury May Have Been Foreseeable

¶ 47 Finally, the Randalls argue that summary judgment is otherwise appropriate because they cannot be held liable for failing to protect Smith from J.B.'s conduct since J.B.'s conduct was unforeseeable. As the Randalls point out, the "overriding practical concern is whether the one causing the harm has shown him- or herself to be uniquely dangerous." *Higgins,* 855 P.2d at 237. While the Randalls claim that they "did not know and had no reason to know of [J.B.]'s alleged homosexual and violent tendencies," Smith argues that Tracy Morris's affidavit establishes that the Randalls did know of J.B.'s homosexual and violent tendencies.

¶ 48 Though the district court ultimately denied their motion to strike, the Randalls argue [11] that the Morris affidavit should not be considered because it contains unfounded legal opinions and inadmissible hearsay. Smith responds that the challenged statements constitute admissible hearsay under either the excited utterance exception or the "catch all" provision of Utah Rules of Evidence 803(24).

¶ 49 The Randalls claim that the Morris affidavit fails to comply with rule 56(e), which requires that affidavits "set forth such facts as would be admissible in evidence." We decline to reach the question of whether the district court properly denied the Randalls' motion to strike because they did not properly appeal that ruling. Litigants must "cross-appeal or cross-petition if they wish to attack a judgment of a lower court for the purpose of enlarging their own rights or lessening the rights of their oppo-

---

11. The Randalls incorporated this argument from Four Corners' responsive brief into their own brief under rule 24(h) of the Utah Rules of Appellate Procedure.

nent." *State v. South*, 924 P.2d 354, 355 (Utah 1996) (citing *Langnes v. Green*, 282 U.S. 531, 538–39, 51 S.Ct. 243, 75 L.Ed. 520 (1931)). The Randalls assert that they properly challenged the admissibility of the Morris affidavit before the district court, but they do not explicitly request in their briefs, nor have they properly filed an appeal requesting, that the district court's ruling be overturned. They merely assert that "[t]he Morris Affidavit sets forth unfounded opinion about what Four Corners knew or should have known concerning J.B.'s violent tendencies based on inadmissible hearsay, and legal opinions about Four Corners' duty to protect Smith." This does not constitute a proper cross-appeal of the district court's ruling. *See* Utah R.App. P. 4(d).

¶ 50 Though a proper cross-appeal was not filed, a review of the challenged paragraphs in the Morris affidavit shows that they do not aid Smith in establishing any material facts. "[A]n affidavit in opposition to a motion for summary judgment must set forth specific facts that would be admissible in evidence in order to show there is a genuine issue for trial." *Dairy Prod. Servs. v. City of Wellsville*, 2000 UT 81, ¶ 54, 13 P.3d 581. *See also* Utah R. Civ. P. 56(e); *Broadwater v. Old Republic Sur.*, 854 P.2d 527, 533 (Utah 1993); *Winter v. Northwest Pipeline Corp.*, 820 P.2d 916, 919 (Utah 1991); *Treloggan v. Treloggan*, 699 P.2d 747, 748 (Utah 1985) (per curiam); *Norton v. Blackham*, 669 P.2d 857, 859 (Utah 1983). "An affidavit that merely reflects the affiant's unsubstantiated opinions and conclusions is insufficient to create an issue of fact." *Dairy Prod. Servs.*, 2000 UT 81 at ¶ 54, 13 P.3d 581. *See also Winter*, 820 P.2d at 919; *Treloggan*, 699 P.2d at 748; *Williams v. Melby*, 699 P.2d 723, 725 (Utah 1985); *Norton*, 669 P.2d at 859.

¶ 51 The first three challenged paragraphs the Randalls challenge as inadmissible hearsay would fail to create any issue of material fact even if admissible. These paragraphs are irrelevant and fail to establish a genuine triable issue concerning the Randalls' negli-

gence. The last three challenged paragraphs all contain unsubstantiated legal opinions and conclusions that cannot create an issue of fact. *See Dairy Prod. Servs.*, 2000 UT 81 at ¶ 54, 13 P.3d 581. Therefore, these challenged paragraphs do not create an issue of fact precluding summary judgment.

¶ 52 While the affidavit's contested paragraphs do not create an issue of material fact, one of the uncontested paragraphs [12] contains information that does create such an issue. In this uncontested paragraph, Morris avers that Carolyn Randall "advised [her] that [J.B.] had beaten his own mother and threatened other siblings." The Randalls did not challenge this statement [13] or attempt to rebut this assertion. This clearly creates a question of whether the Randalls knew or should have known of J.B.'s violent tendencies. Because this disputed fact challenges the Randalls' assertion that Smith's injury was unforeseeable, it creates an issue of fact. Therefore, summary judgment cannot alternatively rest on this defense against Smith's negligence claims.

¶ 53 The existence of even one question of fact precludes us from granting summary judgment on these alternative arguments. Because summary judgment cannot be justified by any of the alternative arguments suggested by the Randalls, we must reverse the district court's decision.

## CONCLUSION

¶ 54 We reverse the summary judgment in favor of the Randalls because they failed to clearly establish that they were employees of DHS and thus entitled to immunity from suit for Smith's injury. Because a question of material fact exists on other issues as well, summary judgment may also not rest upon their alternative arguments. We affirm the summary judgment as to Four Corners because Smith failed to comply with the procedural requirements of the UHCMA. His alleged injuries arose out of and were related

---

12. In their motion to strike before the district court, the Randalls challenged paragraphs 2, 3, 4, 6, 7, and 8 of Tracy Morris's affidavit. They did not challenge paragraph 5, the source of this statement.

13. Because this statement would qualify as an admission by a party-opponent, it does not constitute hearsay. Utah R. Evid. 801(d)(2).

to the provision of mental health care services. As such, he had to comply with the procedural requirements of the UHCMA, which he failed to do. Thus, the district court properly granted Four Corners' motion for summary judgment. We remand to the district court for further proceedings consistent with this opinion.

¶ 55 Reversed in part and affirmed in part.

¶ 56 Chief Justice DURHAM, Justice WILKINS, Judge GREENWOOD, and Judge DAVIS concur in Associate Chief Justice DURRANT's opinion.

¶ 57 Having recused himself, Justice RUSSON does not participate herein; Court of Appeals Judge JAMES Z. DAVIS sat.

¶ 58 Justice HOWE does not participate herein; Court of Appeals Judge PAMELA T. GREENWOOD sat.