900 F.2d 1363
 Fed. Sec. L. Rep. P 95,010, 16 Fed.R.Serv.3d 43
 William R. LARSON, individually and derivatively on Behalf
of Round Table Pizza, Inc., Plaintiff-Appellant,
v.
Richard A. DUMKE, Scott O. Bergren, Norman E. Dean,
Frederick L. Doar, Paul J. Miller, Robert C. Scheidemann,
Charles A. McPhee, Jr., Anne W. Barron, Christopher G.
Gillam, George P. Kailis, Round Table Pizza, Inc., a
California Corporation, Hills Bros. Coffee, Inc., a Delaware
Corporation, and Aussies Enterprises, Inc., d/b/a Bonza
Tucker, a California Corporation, Defendants-Appellees.
 Nos. 88-15440, 89-15124.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 14, 1989.
Decided April 9, 1990.
 
 Peter W. Davis, James C. Martin and Paul D. Fogel, Crosby, Heafey, Roach & May, Oakland, Cal., for plaintiff-appellant.
 Jerome I. Braun, Farella, Braun & Martel, San Francisco, Cal., for defendant-appellee Round Table Pizza, Inc.
 John E. Rumel, Broad, Schulz, Larson & Wineberg, San Francisco, Cal., for other defendants-appellees.
 Appeal from the United States District Court for the Northern District of California.
 Before ALDISERT*, TANG and FLETCHER, Circuit Judges.
 ALDISERT, Senior Circuit Judge:
 
 
 1
 We are to decide if the district court abused its discretion in dismissing a derivative suit brought by a substantial shareholder on behalf of a corporation. Other issues are present, but our decision essentially turns on whether, as found by the trial court, the plaintiff sought to rescind an Employee Stock Option Plan (ESOP). If that was the relief sought, there exists a strong argument that the plaintiff could not qualify as an adequate representative because he was "economically antagonistic" toward the corporation and other shareholders. Rule 23.1, F.R.Civ.P.
 
 
 2
 We consider the issue to be extremely close. It is one that could not be decided solely by the briefs, oral argument, and excerpts of record submitted by the parties; rather, we had to make a painstaking study of the trial court record to determine what actually took place. With the advantage of time for careful review, we have concluded that recision of the ESOP was not formally requested, and accordingly the major factual predicate of the trial court's decision finds no support in the record. We reverse.
 
 
 3
 Jurisdiction was proper in the trial court based on 28 U.S.C. Sec. 1331. Jurisdiction on appeal is proper based on 28 U.S.C. Sec. 1291. The appeal was timely filed under Rule 4(a), F.R.App.P. This court reviews the district court's determination as to adequacy of representation under Rule 23.1, for abuse of discretion. Hornreich v. Plant Industries, Inc., 535 F.2d 550, 552 (9th Cir.1976).
 
 I.
 
 4
 William Larson, founder and once sole owner of Round Table Pizza, is the unsuccessful derivative plaintiff who has brought this appeal to us. In 1979, he sold a 75 percent interest in Round Table to Dumke and Associates, a group consisting of Richard Dumke, Norman Dean, Frederick Doar, Paul Miller and Robert Scheidemann. They, along with Scott Bergren, Thomas Toldrian and others, became members of the board of directors. Anne Baron was, at various times, Vice President-Finance, Treasurer and Chief Financial Officer and Charles McPhee was General Counsel and Secretary. These named individuals, except Larson and Toldrian, constitute the "Dumke group."
 
 
 5
 Sometime after 1979, Larson became dissatisfied with the Dumke group. He alleges that through fraud, misrepresentation and deceit, the group misappropriated funds and business opportunities from Round Table for its own benefit. He also claims that as a result of the group's actions, Round Table, which enjoyed increasing profitability before 1978, has experienced little or no profit, has paid no dividends to shareholders and has failed to experience anywhere near the $6 million to $8 million annual profit expected of a successful franchise operation of its size.
 
 
 6
 In May of 1987, Larson filed suit.
 
 A.
 
 7
 Larson's most significant claim, for purposes of this appeal, are his allegations of fraud and mismanagement in connection with implementation of the Employee Stock Option Plan. On April 3, 1985, an ESOP proposal was made to the Round Table board of directors. Following discussion, the plan was adopted by a unanimous vote, including the votes of Larson's representatives on the board of directors. Later that year a plan disclosure statement was circulated to all shareholders, including Larson. Shareholders were offered $9.78 per share, based on Round Table's calculated net worth of $30 million. All shareholders, except Larson, opted for full participation, or 30 percent of each shareholders' shares.
 
 
 8
 Larson argued that he did not participate in the plan because he realized that the ESOP was primarily a scheme for the Dumke group to pull cash out of Round Table that the company could ill afford to lose. The Dumke group responded that Larson refused to participate in the ESOP because he wanted more money for his shares. They noted that within the same time frame as the ESOP purchase, Larson offered some of his shares for sale at prices ranging between $14.75 and $18.75 a share.
 
 
 9
 To establish the ESOP, Round Table incurred approximately $9 million in debt: a $6 million loan from Wells Fargo Bank, and $3 million in promissory notes to participating shareholders at 12 1/2 percent interest. Because it is a closely held corporation, 98 percent of the ESOP purchase price, or $8.82 million ($5.8 million in cash) went to the Dumke group.
 
 
 10
 Larson alleged breach of fiduciary duty, fraud and misrepresentation in connection with implementation of the ESOP. He contended that the $30 million appraisal of Round Table's net worth was unrealistic. He further alleged that the 12 1/2 percent interest payable on notes to shareholders is excessive and the product of collusion. He fears that company profits will be used exclusively for debt maintenance at the expense of shareholder dividends.
 
 B.
 
 11
 Larson also sought money damages on behalf of the corporation for what he calls improper influence by the Dumke group in certain business transactions. For the sake of brevity, we list only some of these transactions. One involved the purchase by Round Table of Far West Pizza, a franchise consisting of several Round Table restaurants. Another concerned the purchase of an interest in Aussies, an Australian-sponsored venture to franchise spit-roasted chicken restaurants. Still another related to a proposal in which the corporation was to purchase Buffalo Chips, Inc., a gourmet potato chip manufacturer.
 
 
 12
 It is Larson's contention, inter alia, that Round Table paid too high a price for Far West, that the corporation's interest in Aussies was improperly diluted and that the corporation became mired in unnecessary and costly litigation relating to the Buffalo Chips transaction.
 
 II.
 
 13
 Larson's complaint alleged parallel individual and derivative claims for violations of state and federal securities laws, RICO, fraud, breach of fiduciary duty and breach of contract. It asked for damages as to all derivative counts, recision of the amendments to Round Table's articles of incorporation, and "for such other and further relief as the court may deem just and proper." A jury trial was demanded.
 
 
 14
 The defendants responded with a motion to dismiss and, alternatively, a motion for a more definite statement. In October, plaintiff filed a First Amended Complaint that repeated the request for damages for the derivative counts, recision of the amendments to the articles of incorporation, and "such other and further relief as the court may deem just and proper."
 
 
 15
 It is important to emphasize what is not before us. Larson's claims as an individual do not command our attention in this appeal. Similarly, we do not reach the merits of his derivative claims. Our inquiry tracks a very narrow path: Did the district court abuse its discretion in determining that Larson did not qualify as a derivative plaintiff in this suit on behalf of Round Table Pizza?
 
 III.
 
 16
 Larson's primary contention is that the district court abused its discretion when it refused to grant him status as a Rule 23.1 derivative plaintiff because of conflicts between him and other members of the putative class. The district court explained:
 
 
 17
 [T]he term "economic antagonism" also refers to conflicts between representative and class. Davis v. Comed, Inc., 619 F.2d 588, 593-94 reh. denied 623 F.2d 28 (6th Cir.1980). Economic antagonism underlies the opposition to this lawsuit: a recision of the ESOP would have the result that those shareholders who sold their stock to the ESOP would have to refund the tax advantaged sales price received for their shares, and those employees who are currently eligible to receive shares would forfeit their rights.
 
 
 18
 Accordingly, this Court rejects plaintiff's argument that there are no other similarly situated shareholders, and affirms its finding that plaintiff is not an adequate representative of that "class."
 
 
 19
 Larson v. Dumke, No. C87-2592, Order, September 8, 1988, at 5 [hereinafter "Order"].
 
 
 20
 Larson's key argument before us is that the foundation of the district court's decision--that he sought to unscramble the scrambled corporate eggs by rescinding the ESOP--has no support in the record and that the district court erred in concluding that he sought to rescind the ESOP. He claims the suit asks for money damages on behalf of the corporation only, and that, accordingly, no economic antagonism exists between him and the corporation, or between him and other minority shareholders, that would preclude him from qualifying as a Rule 23.1 plaintiff.
 
 
 21
 The Dumke group argues that the record clearly shows that Larson requested recision of the ESOP. Alternatively, they maintain a somewhat weaker argument that even in a case limited to money damages, a verdict for Larson in favor of the corporation would destroy the effectiveness of its operation. We reject this alternative argument as having no basis in the record. The appellees also contend that Larson cannot qualify as a derivative plaintiff because no other shareholders support his suit. This requires us to decide whether a single shareholder may pursue a derivative suit. Appellee's final argument is that Larson's derivative claims are nothing more than a strike suit designed to have the Dumke group purchase his shares in an amount exceeding market value.
 
 
 22
 Our inquiry thus resolves itself into two parts: a) an analysis of the requirements for Rule 23.1 representation, and b) an examination of the record to determine precisely what relief was requested.
 
 IV.
 
 23
 Rule 23.1, F.R.Civ.P. dictates when a shareholder may not sue as a derivative plaintiff to enforce the right of a corporation:
 
 
 24
 The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association.
 
 
 25
 In Hornreich v. Plant Industries, Inc., 535 F.2d 550 (9th Cir.1976), we affirmed the district court holding dismissing plaintiff's derivative suit because he was not an adequate representative of similarly situated shareholders. We were convinced that the plaintiff was attempting to use the derivative suit as leverage in his individual suits against the same defendants. We did not, however, establish criteria for determining adequacy of representation in subsequent cases. We take this opportunity to do so.
 
 
 26
 An adequate representative must have the capacity to vigorously and conscientiously prosecute a derivative suit and be free from economic interests that are antagonistic to the interests of the class. See e.g., Lewis v. Curtis, 671 F.2d 779, 788-89 (3d Cir.), cert. denied, 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 144 (1982); Owen v. Modern Diversified Industries, Inc., 643 F.2d 441, 443-44 (6th Cir.1981) (no antagonistic interests); GA Enterprises, Inc. v. Leisure Living Communities, Inc., 66 F.R.D. 123, 125-27 (D.Mass.1974), aff'd, 517 F.2d 24, 26-27 (1st Cir.1975). Other courts have stated certain factors to determine adequacy of representation: "(1) indications that the plaintiff is not the true party in interest; (2) the plaintiff's unfamiliarity with the litigation and unwillingness to learn about the suit; (3) the degree of control exercised by the attorneys over the litigation; (4) the degree of support received by the plaintiff from other shareholders; ... (5) the lack of any personal commitment to the action on the part of the representative plaintiff"; Rothenberg v. Security Management Co., 667 F.2d 958, 961 (11th Cir.1982) (citations omitted), (6) the remedy sought by plaintiff in the derivative action; (7) the relative magnitude of plaintiff's personal interests as compared to his interest in the derivative action itself; and (8) plaintiff's vindictiveness toward the defendants. Davis v. Comed, Inc., 619 F.2d 588, 593-94 (6th Cir.1980). These factors are "intertwined or interrelated, and it is frequently a combination of factors which leads a court to conclude that the plaintiff does not fulfill the requirements of 23.1." Id. at 593. We are satisfied that an evaluation of these factors is important in determining the adequacy of representation by a derivative plaintiff under Rule 23.1.
 
 
 27
 In determining that Larson was not an adequate representative, the district court relied on:
 
 
 28
 1. Larson's desire to rescind the ESOP, a remedy that is detrimental to both the minority shareholders and the corporation;
 
 
 29
 2. The lack of support by minority shareholders for the derivative suit; and
 
 
 30
 3. Larson's personal interest in securing a higher price for his shares of stock.
 
 
 31
 We now turn to a discussion of these considerations.
 
 A.
 
 32
 We begin by addressing an issue to which we have devoted much original research and study. After expending hours meticulously examining the record, this court is convinced that Larson did not make a meaningful demand for recision of the ESOP.
 
 
 33
 There was no demand for recision of the ESOP in any pleading filed by the plaintiff. This is consistent with plaintiff's request for a jury trial, a remedy available only in cases at law. Further, plaintiff did not join the other minority shareholders as defendants to the derivative suit. The ESOP cannot be rescinded unless the minority shareholders refund the money that they earned when the ESOP was formed and employee shareholders return the shares they purchased from the ESOP. Because these minority shareholders were not joined as defendants, the district court had no power over them and therefore could not order recision.
 
 
 34
 Indeed, the only mention of possible recision of the ESOP that we have been able to discover was during Mr. Larson's November, 1987 deposition. In response to the question: "[Do you want] to have [the ESOP] done away with because it was illegally formed," Mr. Larson stated he did. Within three months, Mr. Larson issued a statement assuring the defendants, other shareholders, and the court that he would "not seek to rescind the ESOP transaction."
 
 
 35
 We conclude, that as to the ESOP, there was no demand for equitable relief, only a claim for money damages. The district court did not determine that an award of monetary damages would be detrimental to the corporation or other minority shareholders. Indeed, if the derivative claim is proved, the damages accrued to the corporation would benefit minority shareholders. Larson's request for money damages that resulted from alleged improprieties in establishment of the ESOP, does not in and of itself make Larson an inadequate representative.
 
 B.
 
 36
 In holding that Larson was not an adequate representative, the district court also relied on the lack of support for the derivative suit by non-defendant shareholders. Under the circumstances of this case, we do not deem this factor sufficient to support the district court's exercise of discretion.
 
 
 37
 Although the cases are not uniform, we are persuaded that a single shareholder may bring a derivative suit. Halsted Video, Inc. v. Guttillo, 115 F.R.D. 177, 179-80 (N.D.Ill.1987); see Nolen v. Shaw-Walker Co., 449 F.2d 506, 509 n. 4 (6th Cir.1971). But compare, Kuzmickey v. Dunmore Corp., 420 F.Supp. 226, 230-31 (E.D.Pa.1976) (one plaintiff alone may not maintain a derivative suit) with Lewis, 671 F.2d at 788-89 (one plaintiff who owned 100 shares in a corporation with nearly 8 million shares outstanding was considered an adequate representative under Rule 23.1). Indeed, the district court acknowledged this in its September 8 order. Order at 4.
 
 
 38
 Larson argues that determination of this issue requires interpretation of the language of Rule 23.1: "[a plaintiff must] represent the interests of shareholders or members similarly situated in enforcing the right of the corporation or association." Rule 23.1, F.R.Civ.P. (emphasis supplied). He says that he is not similarly situated to any other shareholder because everyone, except him, benefited from wrongful formation of the ESOP.
 
 
 39
 We do not support the notion that because a nondefendant shareholder may inadvertently benefit from the wrongdoings of other shareholders, or managers or directors, the non-defendant shareholder does not have the right to oppose a derivative action. The degree of support a putative plaintiff receives from other shareholders, however, is a factor that should be considered in determining adequacy of representation. The weight given to this factor is usually left to the discretion of the trial court.
 
 
 40
 We are persuaded that in this case Larson was not similarly situated with the other shareholders. Round Table Pizza is a closely held corporation. Larson owns 23.41 percent of the stock; 38.51 percent is owned by the defendants; 28.77 percent is owned by the ESOP and controlled by the defendants; 7.7 percent is owned by ex-director Toldrian, and the remaining 1.6 percent is distributed among 13 individual shareholders, all of whom are presently or have been employees of Round Table Pizza. Each non-defendant shareholder has an economic interest in supporting the current management: the Dumke group.
 
 
 41
 Moreover, each non-defendant shareholder benefited from formation of the ESOP. Given the massive quantity of misinformation and confusion surrounding this suit, the minority shareholders may have reasonably believed that Larson wanted the ESOP rescinded. Were the court to rescind the ESOP, every shareholder except Larson would lose money. There is the very real possibility that in refusing to join with or in actively opposing Larson's efforts, the non-defendant shareholders may have been motivated by individual interests, rather than the good of the corporation. We have concluded that the lack of support for the derivative suit, in and of itself, does not indicate that Larson is an inadequate representative.
 
 
 42
 We conclude, therefore, that in this case, Larson is the only shareholder similarly situated and that he meets the Rule 23.1 qualifications. In so concluding, we emphasize that cases determining when a derivative plaintiff is an adequate representative are fact specific, and that, in the common-law tradition, we are deciding only the facts before us without offering obiter dictum as to the legal consequences that would attach to a different set of facts.
 
 C.
 
 43
 Finally, the district court placed some reliance on Larson's offer to sell his shares for an inflated price as a basis for its holding that Larson was not an adequate representative. Larson says that the offers were made to circumvent the new corporate by-laws establishing a right-of-first-refusal as to all Round Table shares. He says he offered 30 percent of his shares at prices ranging between $14.75 and $18.75 a share to be sure the corporation would refuse his offer. This version of the facts is consistent with communications with Round Table management at the time of the offering.
 
 
 44
 The Dumke group responds that Larson's derivative suit is a "strike suit," that his only motivation in bringing this suit was to "achieve the sale of his Round Table stock at a premium price." This is supported by the statement of Mr. Toldrian concerning a conversation between him and Larson. On balance, we are not convinced that Larson's offer to sell some of his shares was sufficient to support the district court's holding that he was not an adequate representative. We are sophisticated enough in derivative suit litigation to recognize that the spectre of a strike suit may be very real. What we know as men and women we must not forget as judges. We know that many cases are eventually settled by having individual defendants purchase the plaintiffs' shares, often at a price in excess of market value. On the state of the record before us, however, we are unable to conclude that this is a strike suit.
 
 V.
 
 45
 In considering the factors set forth in Part IV, we conclude that Larson is the true party in interest, that he is familiar with this litigation, that he has a personal commitment to this action, that the remedy sought can be construed as legitimate for the corporation, that Larson's interest in his personal claims do not outweigh his interest in those asserted on behalf of the corporation, and that notwithstanding the possibility of personal vindictiveness or animosity between Larson and the defendants, it has not been established that Larson is an inadequate representative for the derivative claims.
 
 
 46
 This has been a difficult case to decide. We have set forth our reasoning in detail to demonstrate that we are not substituting our discretion for that of the able trial court. Our proper role is only to determine whether the district court's broad range of discretion was exceeded at this stage of the proceeding: We hold that it was.
 
 VI.
 
 47
 The judgment of the district court dismissing the derivative claims on behalf of Round Table Pizza based on Mr. Larson's failure to qualify as an adequate representative, is REVERSED.
 
 
 
 *
 Ruggero J. Aldisert, Senior Judge, United States Court of Appeals for the Third Circuit, sitting by designation