[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON PLAINTIFFS' MOTION FOR CLASS CERTIFICATION (#126)
The plaintiffs James McQuillan, Sr. and Philip Cobb are residents of the Ryder Mobile Home Park ("Ryder Park"). The park consists of 220 mobile manufactured homes located on 47 acres of commercially zoned property on the Boston Post Road in Milford, Connecticut. A third plaintiff, Ryder Park Resident's Association, Inc. ("association"), is a Connecticut non-stock corporation formed in January of 1999; it is limited to residents of Ryder Park and includes 97% of the current residents in its membership. The defendants in this action are the current and former owners of the Ryder Park property. CT Page 1967
This litigation arises from plans by the current owners of the park to end the use of the property as a mobile home park and develop it for use as a commercial shopping center.[1] The plaintiffs essentially are pursuing their rights afforded by a Connecticut statutory scheme found at General Statutes §21-64 et seq., dealing with the relationship between mobile manufactured home park residents and owners of the property. The statutory provisions require notice to the residents of any plan to sell or discontinue the use of the property as a mobile home park, and give to an association certain rights of purchase. The plaintiffs McQuillan and Cobb seek to litigate these issues as individuals and as representatives of a class consisting of persons who were residents of Ryder Park during the period November 5, 1998, through the present date.
The location of the Ryder Park property on the Boston Post Road in Milford makes it extremely valuable for a commercial development. It is apparently zoned for shopping center development with its current use a non-conforming use.
The individual plaintiffs and the association are championed in their dispute with the current owners by a competing developer. The competing developer proposes to finance the purchase of the property by the association; following the purchase, it would split off a portion of the property for the relocation of the mobile homes, leaving the balance of the property for commercial development.
Counsel for the plaintiffs is being funded by the competing developer. The association is correspondingly obligated not to settle or accept a judgment that might frustrate the competing underwriting developer's plan. The defendants have argued in opposition to the motion for class certification.
Class actions are subject to the requirements of Practice Book §§ 9-7 and 9-8[2]. Those provisions are substantially similar to the language of Fed.R.Civ.P. 23; thus, federal decisions provide aid in determining whether the requirements have been met for maintaining a class action before a Connecticut trial court. Marr v. WMX Technologies, Inc., 244 Conn. 676,680-81, 711 A.2d 700 (1998); Arduini v. Automobile Insurance Co. ofHartford, Connecticut, 23 Conn. App. 585, 589, 583 A.2d 152
(1990). The plaintiffs have a heavy burden of establishing that they have met each element of the requirements governing class CT Page 1968 certification. Arduini v. Automobile Insurance Co. of Hartford,Connecticut, supra, 23 Conn. App. 589.
The four requisites specified by Practice Book § 9-7 and Fed.R.Civ.P. 23 are usually identified by the shorthand names of numerosity, commonality, typicality and adequacy. Feinstein v.Firestone Tire Rubber Co., 535 F. Sup. 595, 600 (S.D.N Y 1982). The motion in this case is denied on the basis that the plaintiffs have failed to demonstrate that they can fairly and adequately represent the interests of the absent class members.
Specifically, this litigation is being funded by a loan to the association from the competing developer. An extensive agreement provides a loan to the association by which they would acquire the property; the property would then be re-divided, leaving the mobile homes located on a portion of the property, with the balance left to the developer for commercial purposes. The developer through a loan to the association also has funded the litigation and is obligated to continue to do so on a limited basis; $200,000 has been deposited, and an additional $100,000 will be forthcoming in litigation expenses. The association is required by its agreement not to settle the litigation on a basis that might interfere with the implementation of the agreement, and to use its best efforts to prevent its members from seeking such a settlement or judgment.
In an analogous case a federal trial court denied a motion for class certification, holding that "[t]he individual plaintiffs cannot represent the class since their substantial legal costs have been paid by the County. Their counsel might well have a conflict of interest between the putative class and the entity paying legal fees — Suffolk County. . . . The motion for class certification must be denied on the ground that the representative parties will not fairly and adequately protect the interest of the class. Fed.R.Civ.P. 23(a)(4)." (Internal quotation marks omitted.) County of Suffolk v. Long IslandLighting Co., 710 F. Sup. 1405, 1406 (E.D.N.Y. 1989). In determining the adequacy of representation in class certification questions, federal courts have considered among other factors whether the plaintiff is the true party in interest, as well as the degree of control exercised by the attorneys over the litigation. Larson v. Dumke, 900 F.2d 1363, 1367 (9th Cir. 1990);Rothenberg v. Security Management Co., Inc., 667 F.2d 958, 961
(11th Cir. 1982) CT Page 1969
The plaintiffs argue that the conflict over settlement possibilities may not develop and the court could address any such eventuality if it manifested itself. However, even the appearance of impropriety is a sufficient basis on which to deny class certification. "The responsibility of class counsel to absent class members whose control over their attorneys is limited does not permit even the appearance of divided loyalties of counsel. Sullivan v. Chase Inv. Servs. of Boston, Inc.,79 F.R.D. 246, 258 (N.D.Cal. 1978). . . . The appearance of divided loyalties refers to differing and potentially conflicting interests and is not limited to instances manifesting such conflict." (Internal quotation marks omitted.) Kayes v. PacificLumber Co., 51 F.3rd 1449, [51 F.3d 1449], 1464 (9th Cir. 1995), cert. denied, 516 U.S. 914, 116 S.Ct. 301,133 L.Ed.2d 206 (1995).
In another decision denying class certification on the ground that plaintiffs failed to demonstrate their ability to fairly and adequately represent the interests of the class, a court noted: "It is axiomatic that no party can fairly or adequately represent the interests of the absent class if he is also motivated by interests adverse to the class as a whole. See [Hansberry v. Lee,311 U.S. 32, 45, 61 S.Ct. 115, 120, 85 L.Ed. 22 (1940)]. Accordingly, to satisfy this requirement, the named plaintiffs must demonstrate that neither they nor their attorneys are subject to extraneous influences that would create a conflict."Kamean v. Local 363 Intern. Broth. of Teamsters, 109 F.R.D. 391,395 (S.D.N.Y. 1986), appeal dismissed, 833 F.2d 1002 (2nd Cir. 1986), cert. denied 481 U.S. 1024, 107 S.Ct. 1911, 95 L.Ed. 517
(1987).
It is not difficult to conceive that during the course of this litigation, the mobile home residents may explore negotiating the best deal they can achieve with the current owners as opposed to irretrievably hitching their wagon to the litigation prospects of a competing developer.
The motion for class certification is denied on the basis of the plaintiffs' inability to demonstrate that they could fairly and adequately represent the interests of the absent class members.
Robert F. Mcweeny, J.