2009 UT 40

**ANGEL INVESTORS, LLC, a Utah limited liability company, suing derivatively on behalf of XanGo, LLC, Plaintiffs and Appellants,**

v.

**Aaron GARRITY, Bryan Davis, Gary Hollister, Gordon Morton, Joseph Morton, and Kent Wood, Defendants and Appellees.**

No. 20080111.

Supreme Court of Utah.

July 21, 2009.

Rehearing Denied July 27, 2009.

Mary Anne Q. Wood, Richard J. Armstrong, Salt Lake City, for plaintiffs.

Mark F. James, Phillip J. Russell, Salt Lake City, for defendants.

## AMENDED OPINION*

DURRANT, Associate Chief Justice:

## INTRODUCTION

¶ 1 In the district court, Angel Investors, LLC, brought a derivative suit on behalf of XanGo, LLC, against Aaron Garrity, Bryan Davis, Gary Hollister, Gordon Morton, Joseph Morton, and Kent Wood, who are the managing members and majority owners of XanGo (collectively, the "Majority Owners"). Prior to initiating the derivative suit, Angel Investors brought a direct suit against XanGo, seeking the dissolution of the company, among other relief. In the derivative suit, the district court ruled that Angel Investors lacked standing to bring the action because Angel Investors could not "fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing" XanGo's rights, as required by Utah Rule of Civil Procedure 23A.[1] The district court reached this conclusion after finding that (1) Angel Investors is similarly situated to other minority shareholders and (2) Angel Investors cannot fairly and adequately represent the interests of those similarly situated shareholders because (A) the shareholders each indicated that they do not support Angel Investors as a derivative plaintiff and (B) Angel Investors' direct suit causes a conflict of interest.

¶ 2 Angel Investors requested time to conduct discovery in order to demonstrate that it is not similarly situated to any other XanGo shareholder. The district court denied Angel Investors' request.

¶ 3 Angel Investors now challenges the district court's rulings on appeal, arguing that it should be allowed to proceed with the derivative action as a class of one and that the district court erred in denying its request to conduct discovery.

¶ 4 The Majority Owners argue that we should affirm the district court, if not on the original grounds then on the alternative grounds that Angel Investors cannot be a fair and adequate representative because it never signed the operating agreement or because Angel Investors stands to gain relatively little from the derivative suit given its small, one percent, interest in XanGo. We find the Majority Owners' arguments unpersuasive.

¶ 5 Particularly, we hold that (1) Angel Investors is not similarly situated to any other XanGo shareholders and, therefore, qualifies as a class of one; and (2) the Majority Owners have not met their burden of proving that Angel Investors is an inadequate representative under rule 23A. We address the Majority Owners' fair and adequate representation arguments as follows. We first determine that the dissent of dissimilar shareholders is not relevant to the fair and adequate representation inquiry when a derivative plaintiff qualifies as a class of one. We next determine that Angel Investors' direct and derivative suits are not in actual conflict and, therefore, the direct suit does not disqualify Angel Investors as a derivative plaintiff. Finally, we decline to address the Majority Owners' alternative grounds for affirming the district court's determination because they were not preserved in the district court. We also do not address the district court's ruling on Angel Investors' discovery request because our standing determination grants Angel Investors all of the relief it seeks in this appeal.

---

* The Court has rewritten paragraph numbers 9, 10, 23.

1. Utah Rule of Civil Procedure 23A was amended and renumbered effective November 1, 2007.

Previously, it was identified as rule 23.1. Rule 23A is substantively identical to the original rule 23.1. Throughout this opinion, we cite to the current version of the Utah rule.

## BACKGROUND

¶ 6 Angel Investors is a limited liability company that owns one percent of XanGo, which is also a limited liability company. The Majority Owners own eighty-six percent of XanGo. In addition to Angel Investors, there are nineteen individual entities that have an ownership interest in XanGo.

¶ 7 Prior to initiating a derivative suit on behalf of XanGo, Angel Investors brought a direct suit against XanGo. In the direct suit, Angel Investors alleged that (1) XanGo loaned funds to the Majority Owners so that they could personally acquire minority interests in XanGo and (2) XanGo denied Angel Investors the right to inspect XanGo's financial records. In the direct action, Angel Investors sought both monetary damages from XanGo and the dissolution of XanGo.

¶ 8 While the direct suit was pending, Angel Investors initiated a derivative suit against the Majority Owners. The derivative suit is the subject of this appeal. In the derivative suit, Angel Investors alleged that the Majority Owners had taken millions of dollars in personal loans from XanGo; purchased minority interests in XanGo with the loaned funds, thus appropriating to themselves opportunities belonging to XanGo and all of its shareholders; and paid themselves excessive compensation while wasting corporate assets.

¶ 9 The Majority Owners responded to Angel Investors' complaint by filing a motion to dismiss pursuant to Utah Rule of Civil Procedure 12(b)(1). In their motion to dismiss, the Majority Owners argued that Angel Investors lacked standing to bring a derivative suit. To support their argument, the Majority Owners attached affidavits from each of XanGo's minority shareholders, other than Angel Investors. All of the affiants stated that they did not support Angel Investors as a representative of XanGo in the derivative suit.

¶ 10 Angel Investors, in opposition to the motion to dismiss, requested time to conduct discovery and argued that it met the standing requirements of Utah Rule of Civil Procedure 23A. Angel Investors contended that through discovery it could prove that it was not similarly situated to any other XanGo shareholder. Specifically, Angel Investors alleged that it is the only minority owner "'which is not in a position to be coerced or bribed by [the Majority Owners].'"

¶ 11 The district court heard oral argument on the motion to dismiss. Two months later, the court issued its ruling, wherein the court granted the motion to dismiss, stating first that Angel Investors is not a class of one because there are other XanGo owners that are similarly situated. Describing the situation of the remaining nineteen XanGo owners, the court stated:

> [S]ix of the nineteen [owners] are the Defendants and two have a family relationship with a Defendant.... Seven other [owners] are employees of XanGo. Only four of the [owners] do not have an employee or family relationship to the Defendants or the company of which the Defendants are the majority owners. While Defendants, their family members, and the XanGo employees may not be similarly situated to [Angel Investors], the Court finds that the four remaining [owners] are similarly situated....

The four remaining owners that the court found to be similarly situated to Angel Investors were among the affiants declaring their opposition to the derivative suit.

¶ 12 The court further stated that Angel Investors cannot fairly and adequately represent the interests of these similarly situated XanGo owners because "there may be some actual conflict between [Angel Investors' interests] in the Direct Lawsuit and its representation in the derivative suit" and because the other XanGo owners have asserted by affidavit that they oppose the derivative suit. The court observed that the minority shareholders "are independent actors and have the ability and right to take a position that may be against their best interests." Accordingly, the district court concluded that Angel Investors "would not be a fair and adequate representative of the non-defendant owners in the derivative suit."

¶ 13 We now review the district court's standing rulings on appeal. We have jurisdiction pursuant to Utah Code section 78A–3–102(3)(j) (2008).

## STANDARD OF REVIEW

■ ¶ 14 A standing determination "'is primarily a question of law, although there may be factual findings that bear on the issue.'"[2] Therefore, we review the district court's legal determinations for correctness but review its factual determinations with some deference to its findings.[3]

## ANALYSIS

■ ¶ 15 Utah Rule of Civil Procedure 23A(a) permits "a derivative action [to be] brought by one or more shareholders or members to enforce a right of a corporation or of an unincorporated association."[4] But rule 23A(b) prevents the maintenance of a derivative action "if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association." Rule 23A further requires a court to dismiss a derivative action if the defendant demonstrates that the plaintiff does not meet the rule's requirements.[5]

■ ¶ 16 If, as in this case, the plaintiff's pleadings allege that the plaintiff fairly and adequately represents the interests of similarly situated shareholders, then "the burden is on the defendant to show that the plaintiff is an inadequate representative under rule 23.1 ... and, therefore, does not have standing."[6] We reverse the district court's determination that the Majority Owners met their burden. Specifically, we hold that (1) Angel Investors is not similarly situated to any other XanGo owner and may proceed as a class of one, and (2) the Majority Owners

have not met their burden of proving that Angel Investors is an inadequate representative under rule 23A.

## I. ANGEL INVESTORS QUALIFIES AS A CLASS OF ONE

■ ¶ 17 The district court found that there are other XanGo shareholders who are similarly situated to Angel Investors. The court, relying in part on a Sixth Circuit decision,[7] considered the following factors in determining that Angel Investors is similarly situated to other shareholders: the benefit that the suit could confer, familial relationships between the defendants and minority shareholders, and employer/employee relationships between the defendants and the minority shareholders. After considering these factors, the court determined that the "four remaining [minority shareholders] are similarly situated to [Angel Investors]."

¶ 18 Angel Investors contends that the court should have included in its analysis one other pertinent factor—the shareholders' motivations for opposing the derivative suit. Angel Investors argues that if the court had considered and applied this factor, it would have found that Angel Investors is not similarly situated to any other XanGo shareholder. Specifically, Angel Investors alleges that all XanGo shareholders except for itself oppose the derivative suit because the shareholders are "motivated by individual interests, rather than the good of the corporation."[8]

¶ 19 To support its contention that the district court should have considered in its analysis the shareholders' motivations for op-

2. *LeVanger v. Highland Estates Props. Owners Ass'n,* 2003 UT App 377, ¶ 8, 80 P.3d 569 (quoting *Kearns–Tribune Corp. v. Wilkinson,* 946 P.2d 372, 373–74 (Utah 1997)).

3. *See id.*

4. Although rule 23A speaks in terms of derivative actions brought on behalf of corporations and unincorporated associations, the rule governs derivative actions brought on behalf of limited liability companies as well. *See GLFP, Ltd. v. CL Mgmt., Ltd.,* 2007 UT App 131, ¶ 2 n. 1, 163 P.3d 636 (applying rule 23A to a limited partnership that became a limited liability company after the derivative suit was filed).

5. *See LeVanger,* 2003 UT App 377, ¶ 18, 80 P.3d 569.

6. *Id.*

7. *Nolen v. Shaw–Walker Co.,* 449 F.2d 506, 508 n. 4 (6th Cir.1971) (stating that shareholders are not similarly situated if they are "(1) the defendants; (2) employees of the Company; [or] (3) the ... defendant's" family members).

8. *Larson v. Dumke,* 900 F.2d 1363, 1368 (9th Cir.1990).

posing the derivative suit, Angel Investors cites *Larson v. Dumke*.[9] In *Larson*, the Ninth Circuit concluded that a plaintiff may proceed with a derivative suit as a class of one where every other "non-defendant shareholder has an economic interest in supporting the current management."[10] In *Larson*, all of the non-defendant shareholders except for the plaintiff benefitted from the alleged corporate misfeasance.[11]

¶ 20 Angel Investors also cites *Eye Site, Inc. v. Blackburn*, a Texas Supreme Court decision, for the proposition that a minority shareholder in a closely held corporation can qualify as a class of one.[12] In *Eye Site*, a sole dissenting shareholder brought a derivative action against all other shareholders of the corporation.[13] The defendants argued that derivative plaintiffs cannot proceed without representing similarly situated shareholders.[14] The Texas Supreme Court reasoned that the requirement for a plaintiff in a derivative suit to adequately represent simi-

larly situated shareholders "does not place any minimum numerical limits on the number of shareholders who must be 'similarly situated.' It follows that if the plaintiff is the only shareholder 'similarly situated,' he is in compliance with both the letter and the purpose of the rule."[15] The court further reasoned that any other interpretation of the requirement "could deprive the corporation of any remedy it might have as the result of wrongs done it by the major shareholders."[16] Both federal and state courts have subscribed to this view.[17]

■ ¶ 21 We begin our analysis by recognizing that the purpose of a derivative suit is to advance the interests of the corporation,[18] which is an entity distinct from its individual shareholders. Despite this distinction, we recognize that in closely held corporations, it becomes easy for the majority shareholders to identify themselves as the corporation. These shareholders not only receive the ma-

9. *Id.*

   While in this case we are analyzing Utah Rule of Civil Procedure 23A, this rule is "substantively identical" to its federal counterpart. *LeVanger*, 2003 UT App 377, ¶ 17, 80 P.3d 569. Accordingly, we " 'freely refer to authorities which have interpreted the federal rule.' " *Id.* (quoting *Gold Standard, Inc. v. Am. Barrick Res. Corp.*, 805 P.2d 164, 168 (Utah 1990)).

10. 900 F.2d at 1368.

11. *Id.*

12. 796 S.W.2d 160, 161–63 (Tex.1990).

13. *Id.* at 163.

14. *Id.* at 161.

15. *Id.* at 162–63.

16. *Id.* at 163.

17. *See, e.g., Jordan v. Bowman Apple Prods. Co.*, 728 F.Supp. 409, 413 (W.D.Va.1990) (allowing a derivative action after finding that the plaintiff was not similarly situated to any other shareholder); *Halsted Video, Inc. v. Guttillo*, 115 F.R.D. 177, 179–80 (N.D.Ill.1987) (holding that a plaintiff who brought a derivative action against all other shareholders constituted a legitimate class of one); *Clemons v. Wallace*, 42 Colo.App. 17, 592 P.2d 14, 15–16 (1978) (also holding that a plaintiff who brought a derivative action against all other shareholders may constitute a legitimate class of one); *Brandon v. Brandon*

*Constr. Co.*, 300 Ark. 44, 776 S.W.2d 349, 351–54 (1989) (holding that the plaintiff shareholder could bring a derivative action as a "class of one," although the other minority shareholders stated that plaintiff did not represent their interests).

18. *See Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 373–74, 86 S.Ct. 845, 15 L.Ed.2d 807 (1966) ("We cannot construe Rule 23 or any other one of the Federal Rules as compelling courts to summarily dismiss, without any answer or argument at all, cases like this where grave charges of fraud are shown by the record to be based on reasonable beliefs growing out of careful investigation. The basic purpose of the Federal Rules is to administer justice through fair trials, not through summary dismissals as necessary as they may be on occasion. These rules were designed in large part to get away from some of the old procedural booby traps which common-law pleaders could set to prevent unsophisticated litigants from ever having their day in court. If rules of procedure work as they should in an honest and fair judicial system, they not only permit, but should as nearly as possible guarantee that bona fide complaints be carried to an adjudication on the merits. Rule 23(b), like the other civil rules, was written to further, not defeat the ends of justice. The serious fraud charged here, which of course has not been proven, is clearly in that class of deceitful conduct which the federal securities laws were largely passed to prohibit and protect against."); *see also GLFP, Ltd. v. CL Mgmt., Ltd.*, 2007 UT App 131, ¶ 8, 163 P.3d 636.

jority of the profits the corporation generates, but they often serve on the board and make operating decisions for the corporation.[19] We have previously described the characteristics of closely held corporations as: " '(1) a small number of shareholders; (2) no ready market for corporate stock; and (3) active shareholder participation in the business.' "[20] Considering these characteristics, we recognize that closely held corporations may be more vulnerable to malfeasance. Majority shareholders of closely held corporations have increased control over the corporation because they likely serve on the corporation's board; their dual roles can make malfeasance easier to conduct as well as justify. Likewise, the nature of a closely held corporation, where there is often a small number of shareholders and many of those may have close ties to each other, lessens the likelihood that a minority shareholder will speak out against corporate malfeasance.

¶ 22 In light of the greater vulnerability to malfeasance that is present in closely held corporations, we hold that a sole dissenting shareholder in a closely held corporation qualifies as a class of one for purposes of derivative standing when that shareholder (1) seeks by its pleading to enforce a right of the corporation and (2) does not appear to be similarly situated to any other shareholder. Further, we hold that shareholders' motivation for opposing the derivative action is relevant to determining the question of whether any shareholder is similarly situated to the derivative plaintiff. To conclude otherwise would be to permit corporate looting and malfeasance in circumstances where all but one shareholder benefit personally from the illegality or are at risk of personal detriment were the malfeasance brought to light.

¶ 23 Angel Investors, as a sole dissenting shareholder in a closely held corporation, has brought a derivative suit alleging corporate malfeasance by the Majority Owners. Angel Investors has also alleged that all XanGo shareholders other than itself stand to gain from the Majority Owners' continued corporate malfeasance. The Majority Owners have not refuted this allegation. Accordingly, Angel Investors, as a sole dissenting shareholder of a closely held corporation, having pled corporate malfeasance, and having alleged that all other minority shareholders stand to gain from continued malfeasance, qualifies as a class of one.

## II. THE MAJORITY OWNERS HAVE NOT MET THEIR BURDEN OF PROVING THAT ANGEL INVESTORS IS AN INADEQUATE REPRESENTATIVE OF XANGO

¶ 24 Having determined that Angel Investors qualifies as a class of one, we need not determine whether Angel Investors can "fairly and adequately represent the interests of the shareholders or members similarly situated"[21] because by definition a class of one is not similarly situated to any other shareholders or members. Instead, we must determine what, if any, requirements remain with respect to the adequacy of Angel Investors' representation and whether the Majority Owners have met their burden of proving that Angel Investors is inadequate to achieve standing as a derivative plaintiff.

### A. A Derivative Plaintiff Must Fairly and Adequately Represent the Interests of the Corporation

¶ 25 Although rule 23A does not explicitly state that a derivative plaintiff must be able to fairly and adequately represent the corporation, this requirement is inherent in the nature of the derivative action. When bringing a derivative action, a derivative plaintiff stands in the stead of the corporation, which is the real party in interest. Accordingly, the derivative plaintiff must be able to fairly and adequately represent the real party's interests, otherwise the plaintiff is acting on its own behalf and not that of the corporation. The United States Supreme

**19.** *Aurora Credit Servs., Inc. v. Liberty W. Dev., Inc.,* 970 P.2d 1273, 1280 (Utah 1998).

**20.** *Dansie v. City of Herriman,* 2006 UT 23, ¶ 17, 134 P.3d 1139 (quoting *Fletcher Cyclopedia of the Law of Private Corporations* § 70.10 (2002)).

**21.** Utah R. Civ. P. 23A(b) (2008).

Court, interpreting the federal rule, which is virtually identical to our rule,[22] stated that the purpose of rule 23.1 is "to prevent shareholders from suing in place of the corporation in circumstances where the action would disserve the legitimate interests of the *company* or its shareholders."[23] Accordingly, lower federal courts have interpreted rule 23.1 to include the requirement that a derivative plaintiff fairly and adequately represent the corporation.[24] We do likewise.

¶ 26 To be a fair and adequate representative of the corporation, a derivative plaintiff must not have a personal interest that competes with the interests of the corporation or prevents the plaintiff from acting in the corporation's best interest. Determining whether a derivative plaintiff fairly and adequately represents the corporation is a fact-intensive inquiry.

¶ 27 The Majority Owners argue that the following facts demonstrate that Angel Investors cannot be a fair and adequate representative: (1) Angel Investors has a conflict of interest with XanGo due to Angel Investors' direct suit against XanGo; (2) Angel Investors did not sign XanGo's operating agreement; and (3) Angel Investors stands

to gain a relatively small amount of damages due to its minimal ownership interest in XanGo. We consider the Majority Owners' arguments in light of our conclusions that Angel Investors is a class of one and must, as a derivative plaintiff, fairly and adequately represent XanGo's interests.

1. Angel Investors' Direct Suit Does Not Create a Conflict of Interest Such That Angel Investors Cannot Fairly and Adequately Represent XanGo's Interests

¶ 28 In this case, the Majority Owners argue that Angel Investors is not a fair and adequate representative of XanGo because Angel Investors has a direct action pending against XanGo. Particularly, the Majority Owners argue that the relief Angel Investors seeks in its direct action is incompatible with the relief it seeks in its derivative action. We disagree.

¶ 29 Although we have not squarely decided the issue of whether a plaintiff's direct action against a corporation disqualifies that plaintiff from bringing a derivative action on behalf of the corporation, our case law demonstrates that Utah does not have a per se rule barring simultaneous direct and

---

22. *Compare* Utah R. Civ. P. 23A ("The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association.") *with* Fed.R.Civ.P. 23.1 ("The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of shareholders or members who are similarly situated in enforcing the right of the corporation or association.").

23. *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 532 n. 7, 104 S.Ct. 831, 78 L.Ed.2d 645 (1984) (emphasis added).

24. *See, e.g., Pisnoy v. Ahmed*, 499 F.3d 47, 64 (1st Cir.2007) (stating that "the [derivative] shareholder must fairly and adequately represent the corporation"); *Owen v. Modern Diversified Indus., Inc.*, 643 F.2d 441, 443 (6th Cir.1981) (stating that under rule 23.1 a derivative shareholder must be able to fairly and adequately represent both the corporation as well as similarly situated shareholders); *Halsted Video, Inc. v. Guttillo*, 115 F.R.D. 177, 179 (N.D.Ill.1987) ("The burden is on the defendants to show that the plaintiff will not fairly and adequately represent *the cor-*

*poration* and its shareholders." (emphasis added)); *Lee v. Andersen*, No. 4–72 Civil 388, 1975 U.S. Dist. LEXIS 12035, at *10–12 (D.Minn. 1975) ("The representative plaintiff must pursue the action in the interest of and solely for the benefit of the corporation; plaintiff's honesty, integrity, conscientiousness, skill and competent counsel are also to be considered as relevant components of adequate representation, and one of the most important factors to consider in making the determination as to who is or is not a proper party to fairly and adequately represent the corporation is to determine whether in fact the representative plaintiff's interests are the same as the corporation's and whether or not the representative plaintiff or his counsel have other interests conflicting with the interest of the corporation."); *see also Ferer v. Erickson & Sederstrom, P.C.*, 272 Neb. 113, 718 N.W.2d 501, 507 (2006) ("A shareholder may not commence or maintain a derivative proceeding unless the shareholder adequately represents the interests of the corporation in enforcing the right of the corporation."); *McLeod v. Albanese*, 815 So.2d 472, 476 (Miss.Ct.App.2002) (stating that a shareholder's ability to proceed with a derivative action "turn[s] on whether he could 'fairly and adequately' represent the company's interest in the suit").

derivative actions.[25] Rather, we have stated that "a court may allow a minority shareholder in a closely held corporation to proceed directly against corporate officers," and that same minority shareholder is not per se barred from bringing a derivative action on behalf of that same corporation.[26] To determine whether a direct and derivative suit may be brought by the same shareholder, a court must determine if the two actions create a conflict of interest such that the shareholder cannot act in the best interest of the corporation or similarly situated shareholders.[27] A possible conflict, as the district court found in this case, is insufficient to disqualify a derivative plaintiff.[28] The conflict must be actual.

¶ 30 An actual conflict of interest exists, for example, when the relief sought in the direct action is "incompatible" with the relief sought in the derivative action.[29]

When, however, both suits are contingent "upon the proof of the same nucleus of facts," then it is presumed that the plaintiff will advance both actions with the same vigor.[30] In such a case, the plaintiff presumably will fairly and adequately represent the interests of the corporation and any similarly situated shareholders in the derivative action because doing so would serve the plaintiff's interests in the direct action. In the case now before us, we hold that the Majority Owners have failed to meet their burden of proving the existence of an actual conflict of interest that would prevent Angel Investors from fairly and adequately representing XanGo in a derivative action against the Majority Owners because (1) the relief Angel Investors seeks from its direct action is not incompatible with the relief it seeks in the derivative action and (2) Angel Investors must prove the same nucleus of facts to prevail in both actions.

---

25. *Aurora Credit Servs., Inc. v. Liberty W. Dev., Inc.*, 970 P.2d 1273, 1282 (Utah 1998) (overturning a district court decision that granted summary judgment in favor of the defendant as to the plaintiff's derivative claim and dismissed the plaintiff's direct claim).

Other jurisdictions agree that simultaneous direct and derivative actions are not per se barred. *See, e.g., Rothenberg v. Sec. Mgmt. Co.*, 667 F.2d 958, 961 (11th Cir.1982); *Davis v. Comed, Inc.*, 619 F.2d 588, 594 (6th Cir.1980) (noting that "other litigation pending between the plaintiff and defendants" is only a factor to be considered in determining whether a derivative plaintiff is a fair and adequate representative); *Bertozzi v. King Louie Int'l, Inc.*, 420 F.Supp. 1166, 1180 (D.R.I.1976) (recognizing that a court may take into account the possibility that other litigation or outside entanglements may, but does not necessarily, render a derivative plaintiff an inadequate representative); *see also* 19 Am.Jur.2d *Corporations* § 1934 ("[A] shareholder may bring a derivative action and an individual claim at the same time if he or she has suffered a different injury than the other shareholders."). *But see Ryan v. Aetna Life Ins. Co.*, 765 F.Supp. 133, 136 (S.D.N.Y.1991) (Although "it was not yet clear whether any actual conflict would arise" between the direct and derivative suits, the court found "early intervention to be the more prudent, and, ultimately, the more efficient course" and concluded that the plaintiff "must elect a single representative role.").

26. *Aurora Credit Servs., Inc.*, 970 P.2d at 1281.

27. *See* 13 *Fletcher Cyclopedia of the Law of Private Corporations* § 5981.42 (2004) (stating that a conflict of interest that bars a plaintiff from bringing a derivative suit is a conflict wherein the plaintiff "cannot be expected to act in the interests of others because doing so would harm the derivative plaintiff's other interests").

28. The district court explained its finding as follows,

It is possible that the Direct Lawsuit will not decrease Plaintiff's interest in pursuing the derivative claims for the benefit of all non-defendant XanGo owners, because any distribution to Plaintiff upon dissolution would be increased if Plaintiff is successful in the derivative suit. However, the interests of Plaintiff and the other non-defendant owners are not aligned regarding the Direct Lawsuit. The Court finds that there may be some actual conflict between Plaintiff's interest in the Direct Lawsuit and its representation in the derivative suit.

29. *See Ryan*, 765 F.Supp. at 135–37 (finding incompatibility between relief sought in a derivative suit and that sought in a direct suit where in the derivative suit the plaintiff sought additional payments for the sale of a portion of a company and in the direct suit sought punitive damages and the imposition of a constructive trust on the funds received for the sale of a portion of the company).

We do not foreclose the possibility that other facts may exist to demonstrate a conflict of interest between a direct and a derivative suit. In this case, however, the Majority Owners only argue a conflict based upon the incompatibility of the relief sought.

30. *Bertozzi*, 420 F.Supp. at 1180.

¶ 31 The relief Angel Investors seeks from its separate actions is not necessarily incompatible. In the direct suit, Angel Investors seeks monetary damages and the dissolution of XanGo. In the derivative suit, Angel Investors seeks to represent XanGo in recovering for the Majority Owners' malfeasance. If Angel Investors prevails in both actions, then the damages that the individual Majority Owners would pay as a result of the derivative action would be paid out to all XanGo shareholders in the winding up after dissolution, as sought for in the direct action. Further, in a situation of corporate looting from a closely held corporation, as Angel Investors alleges has been taking place here, dissolution of the corporation is not necessarily against the corporation's best interest. Dissolution would not only stop the looting but would also allow for a reorganization of the enterprise, such that all shareholders could receive a fairer return on their investment.

¶ 32 Further, Angel Investors is presumed to fairly and adequately represent XanGo in the derivative action because Angel Investors must prove the same nucleus of facts to prevail in the derivative action that it must prove in order to prevail in the direct action. In the direct action, Angel Investors alleges, in part, that XanGo loaned funds to the Majority Owners so that they could personally acquire minority interests in XanGo. In the derivative action, Angel Investors, on behalf of XanGo, makes, in part, the following allegations: that the Majority Owners have taken personal loans from XanGo, aggregating millions of dollars; purchased minority interests in XanGo with the loaned funds, thus appropriating to themselves opportunities belonging to XanGo and all of its shareholders; and paid themselves excessive compensation while wasting corporate assets. We see no allegations in the direct action that would prevent Angel Investors from vigorously pursuing the allegations in the derivative action. Rather, proof of the facts alleged in the direct action, namely that XanGo loaned funds to the Majority Owners to enable them to acquire minority interests in

XanGo, would only aid Angel Investors in prevailing in the derivative action.

¶ 33 Accordingly, we conclude that Angel Investors' direct action does not create a personal interest such that Angel Investors' pursuit of that interest would prevent Angel Investors from acting in the best interest of XanGo in the derivative action. Rather, the remedies sought in the two actions are compatible, and Angel Investors must prove the same nucleus of facts to succeed in both cases.

2. Because It Is Inadequately Briefed, We Decline to Address the Issue of Whether Angel Investors' Refusal to Sign the Operating Agreement Prevents Angel Investors From Fairly and Adequately Representing XanGo's Interests

¶ 34 The following statement constitutes the entirety of the Majority Owners' argument that Angel Investors' failure to sign the operating agreement precludes Angel Investors from fairly and adequately representing XanGo in a derivative suit:

> [Angel Investors'] refusal to sign an operating agreement with XanGo is a factor to be considered in this Court's determination of whether [Angel Investors] can fairly and adequately represent XanGo's other owners. In their affidavits opposing [Angel Investors] as their representative in this case, all but one XanGo owner cited the fact that [Angel Investors] had not signed an operating agreement with XanGo as demonstrating [Angel Investors'] inadequacy as a representative.

This argument lacks the detail and citations to the record that are necessary before we will consider an argument on appeal.

¶ 35 We have long held that we have discretion to not address an inadequately briefed argument.[31] Rather, a party "must plead his claims with sufficient specificity for this court to make a ruling on the merits."[32] "[W]e will not assume [a party's] 'burden of argument and research.'"[33] In

---

31. *See, e.g., Loveland v. Orem City Corp.*, 746 P.2d 763, 770 (Utah 1987).

32. *Allen v. Friel*, 2008 UT 56, ¶ 9, 194 P.3d 903.

33. *Id.* (quoting *Treff v. Hinckley*, 2001 UT 50, ¶ 11, 26 P.3d 212).

addition to sufficient development of the argument and citation to legal authority, a party must also "provide the appellate court with the parts of the record that are central to the determination of" the issue.[34] Relevant parts of the record may include "findings of fact and conclusions of law [or] the transcript of the court's oral decision."[35]

¶ 36 The argument that Angel Investors is not a fair and adequate representative because it failed to sign the operating agreement is asserted without the support of legal reasoning or authority. Further, the Majority Owners fail to provide any record citations to demonstrate preservation of the argument and the district court's determination of the issue.[36] For these reasons, we do not address this issue on appeal.

3. We Decline to Address Whether the Relatively Small Benefit That Angel Investors Stands to Gain From the Derivative Action Impacts Angel Investors' Ability to Represent XanGo's Best Interest

¶ 37 The Majority Owners argue on appeal that because Angel Investors stands to gain relatively little from any recovery in the derivative action Angel Investors cannot be considered a fair and adequate representative under rule 23A. While the Majority Owners do develop this argument and provide legal authority for their position, they fail to demonstrate preservation of the argument in the district court.[37]

¶ 38 We may affirm a judgment on an unpreserved alternate ground "where the alternate ground is apparent on the record" and when "the facts as found by the trial court are sufficient to sustain the decision of the trial court on the alternate ground."[38] On appeal, we are "limited to the findings of fact made by the trial court and may not find new facts or reweigh the evidence in light of [a] new legal theory or alternate ground."[39]

¶ 39 In this case, the findings of the district court are insufficient for us to affirm the district court's decision that Angel Investors is not a fair and adequate representative on the alternate ground that Angel Investors stands to recover so little that it cannot be a fair and adequate representative of XanGo. The Majority Owners contend that because Angel Investors owns just one percent of XanGo and that therefore only $1 million is at stake in this case, Angel Investors stands to gain too little to be considered a fair and adequate representative. However, the district court made no findings regarding the potential recovery in this case. Angel Investors' counsel asserted to the court that "even on first blush" the recovery if Angel Investors prevails is "more than $1,000,000, and probably substantially more than that." Further, the district court made no specific finding regarding Angel Investors' ownership interest. Rather, the court stated, "Defendants assert that . . . Plaintiff owns 1% of XanGo. . . ." Stating the Majority Owners' assertion without ruling on the validity of the assertion does not constitute a finding of fact. Accordingly, we decline to consider this alternate ground because the district court's findings of fact are insufficient to sustain a decision regarding the theory.

**CONCLUSION**

¶ 40 We hold that Angel Investors is not similarly situated to any other XanGo shareholder and, accordingly, qualifies as a class of

---

34. *Id.* ¶ 10.

35. Utah R.App. P. 24(a)(11)(C).

36. The Majority Owners do provide a record cite to the argument that because Angel Investors failed to sign the operating agreement it lacks the ownership interest necessary to bring a derivative suit. But the Majority Owners do not directly raise this argument on appeal. As to this argument, the district court ruled that factual issues remain as to whether Angel Investors is a member of XanGo; therefore, the court did not grant the Majority Owners' motion to dismiss based upon this argument. We do not disturb the district court's determination as to this issue.

37. Utah R.App. P. 24(a)(5)(A) (requiring that parties demonstrate preservation of an issue by providing a citation to the record showing that the issue was presented to the district court).

38. *Bailey v. Bayles*, 2002 UT 58, ¶ 20, 52 P.3d 1158.

39. *Id.*

one. We further hold that the Majority Owners have failed to meet their burden of proving the existence of an actual conflict of interest that would prevent Angel Investors from fairly and adequately representing Xan-Go in a derivative action against the Majority Owners. We therefore remand this case to the district court for further proceedings consistent with this opinion.

¶ 41 Chief Justice DURHAM, Justice WILKINS, Justice PARRISH, and Justice NEHRING concur in Associate Chief Justice DURRANT'S opinion.